*IN RE* MALONE'S ESTATE, IN THE MATTER OF NOTIFICATION BY BRYAN, ESCHEATOR.

*EX PARTE* BUIST, ADMINISTRATOR.

*EX PARTE* MALONE.

*EX PARTE* BUIST, ADMINISTRATOR, *ET AL.*

1. Upon the death of a person intestate, title to his real estate instantly vests in his heirs, or, leaving none, in the state, although it may not be known until after judicial inquiry where the title has vested.

2. Where title to real estate vests in the state, the state will not dispose of the property until the escheat has been ascertained in the mode prescribed by law; but the state may, before office found, grant to individuals or corporations her right to property already escheated, and even to such as may hereafter escheat, in which case the right, when legally established, has relation back to the death of the intestate.

3. The state retains absolute control over charters granted to municipal corporations, but not over the property of such corporations.

4. In 1799 the state granted to the City Council of Charleston for the benefit of its Orphan House, all escheated property, within certain limits, to the amount of $50,000; and in 1868 the constitution directed the proceeds of all escheated property to be preserved as a "State School Fund" for the use of "free public schools." In 1864 a person died intestate, leaving lands within said limits, which was claimed to be escheated property. *Held*, that the right so granted by the act of 1799 could not be divested by the constitution of 1868, and that the said city council were entitled to so much of this property (if escheated) as would, with its previous receipts from like sources, make up the amount of $50,000.

5. The right of the city to such balance is not affected by its failure to claim previously escheated property of greater value within those limits, which had been granted by the state to other parties.

6. But an act of the legislature, passed in 1878, extending the limit of its former grant of $50,000 to $100,000, was in conflict with the constitution of 1868 (art. X., § 11), and therefore null and void.

7. An Orphan House under the control of the city of Charleston, open only to "poor orphan children, or the children of poor, distressed, or disabled parents," is not a "free public school" of the state.

8. Notification of escheat was properly served under section 2300 of the general statutes, but the subsequent proceedings thereunder were not conducted in compliance with the law. Some parties came in and filed their traverse. *Held*, that the proceeding could not affect parties not appearing, but having been properly commenced, it should not be dismissed, and the parties who did appear were entitled to have a trial of their traverse.

9. Each separate traverse under a notification of escheat is a separate case, and should be separately tried.

Before WITHERSPOON, J., Charleston, November, 1883.

These appeals were brought to this Court under the titles of: "In the matter of notification by George D. Bryan, Esq., deputy escheator for the City Council of Charleston; *ex parte* G. L.

Buist, administrator, v. G. D. Bryan, deputy escheator, *et al.*; *ex parte* Lemuel Malone, *et al.*, v. G. D. Bryan, deputy escheator, *et al.*; *ex parte* G. L. Buist, administrator, *et al.*, v. G. D. Bryan, deputy escheator." The opinion fully states the cases.

Upon the motion of Buist, administrator, to set aside all of the proceedings as "unconstitutional, null, and void," the Circuit judge, after making a statement of the facts, and citing and quoting *Const., Art.* X., § 11; act of 1799, § 15, 5 *Stat.*, 366; *Gen. Stat.*, § 2318, continued his decree as follows:

It appears from the year book for 1881, issued by the city of Charleston, introduced on argument, without objection, that the full amount of the $50,000 limited by the grant under act of 1799, has never been realized from escheated property by the City Council of Charleston for the benefit of the Orphan House. It will be observed that under the act of 1799 the grant is made not to the City Council of Charleston for governmental purposes, but to said City Council for the express benefit of the Orphan House of Charleston, a charitable institution. In *Cooley's Const. Lim.*, 339, it is stated: "If a grant is made to a municipal corporation charged with a trust in favor of an individual private corporation or charity, the interest which the *cestui que trust* has under the grant may sustain it against legislative revocation." It will not be denied that the Orphan House, under the act of 1799, under grant from the state, was entitled to any interest or title of the state acquired at the death of Thomas W. Malone, in 1864, by escheat.

It is equally clear that if any right vested in the City Council for the Orphan House upon the death of Thomas W. Malone in 1864, such right could not be divested by any subsequent provision of the constitution of 1868. In *Harlock* v. *Jackson*, 1 *Tr. Con. R.*, 135, it was held: "In cases of escheats for want of heirs the freehold is vested in the state from the time of the death." In this case the land had been granted to one Allison, who died without heirs. The court says: "It seems clear that the land in question is to be regarded as an escheat from the time of Allison's death.  *  *  *  In order to authorize the use of it to public purposes or the disposal of it by public au-

thority, there must be an office found, that is to say, there must be proceedings to establish the escheat pursuant to act of assembly."

Under this authority it seems that the title cannot remain in abeyance, but instantaneously vests in the public upon death without any one who can lawfully claim by descent or purchase. I must conclude and hold that upon the death of Thomas W. Malone, the City Council of Charleston acquired, under the act of 1799, vested rights for the benefit of the Orphan House, that could not be annulled or repealed by the constitution of 1868.

Do the provisions of section 11 of article X. of the constitution of 1868 conflict with the provisions of the act of 1799? Whenever an act of the legislature can be construed and applied as to avoid conflict with the constitution, it should be done. The act of 1799 vests property now escheated, or which shall hereafter be escheated. Section 11 of article X. of the constitution directs the proceeds of estates of deceased persons who have died without leaving a will or heir, to be invested as a school fund. In this section of the constitution we find the limitation, "not otherwise appropriated by this state or the United States."

By reference to legislative acts, it appears to have been the policy of the legislature prior to the adoption of the constitution of 1868 to grant escheated property to a certain amount in value to trustees of schools and charitable associations in certain localities. It was decided in *Nettles* v. *Cummings*, 9 *Rich Eq.*, 440, that the legislature had the right to grant future escheats, and conferring power to hold and possess escheated property to a certain amount was not void for uncertainty. It occurs to me that the expression, "not otherwise appropriated by the state or the United States," in section 11 of article X. of the constitution, was intended as a recognition of the validity of former grants by the state of escheated property, and was only intended to apply the proceeds of escheated property in excess of the limits of such grants. Section 2,318 of the general statutes seems to me to sustain this view.

In this view, I do not think the constitution of 1868 conflicts with the act of 1799, but even if it did, it could not repeal said act, if, as I conclude, rights vested under said act at the death of

Thomas W. Malone in 1864. The act of December 23, 1878, must be held to be in conflict with article X., § 11, of the constitution of 1868, but this does not affect the conclusions reached already that this motion cannot be granted.

It is therefore ordered and adjudged, that the motion of George Lamb Buist, administrator of Thomos W. Malone, be refused.

The Circuit decree on the motion to dismiss the proceedings as "unauthorized under the laws of the state in such cases made and provided," (omitting its statement of facts), was as follows:

It was conceded in argument that George D. Bryan, deputy escheator, had not procured the *inquest* and *verdict* of a *jury* with the certificate thereof by a judge, as provided in section 2301 of the general statutes. At this stage of the proceedings to escheat the lands of Thomas W. Malone, this motion is made. The authority for the institution of this proceeding by George D. Bryan is not questioned. The motion only seeks to set aside all of the proceedings subsequent to the notification of escheat as null and void, under the law regulating the escheat of property.

Chapter XCII. of the general statutes is substantially the same as the act of 1787 (5 *Stat.*, 47), entitled "an act to appoint escheators and to regulate escheats." In *McCaw* v. *Galbraith*, 7 *Rich.*, 86, the court, referring to the act of 1787, say: "This act and the amendments of it contain the only provision which we have of machinery for executing such law concerning escheats and forfeitures as now prevails in this State. * * * In providing in reference to such cases for inquest of office, public notice, order of sale, if there should be no claimant, traverse by a claimant and trial * * *."

In *Harlock* v. *Jackson*, 1 *Tr. Con. R.*, 142, it is held that in order to authorize the use of property to public purposes or the disposal of it by the public authority there must be *an office found*, that is, proceedings to establish the escheat, pursuant to act of assembly. I therefore conclude and hold that a compliance with the provisions of section 2301 of the general statutes is necessary in proceedings for escheat of land.

Does the omission to comply with the provisions of the said

section render all of the proceedings had in this cause null and void? What proceedings have been had in this cause? The deputy escheator (whose authority to institute this proceeding is not questioned) is before the court with notice that certain lands have escheated. Upon the deputy escheator's notice, but before inquest of office, a claimant is permitted by the court upon petition in this proceeding to traverse the escheat and take testimony to be used at the *trial of* the cause. The court has therefore undertaken to determine the issue between the escheator and traverser. Pending this issue, other claimaints, who have not as yet traversed the escheat, upon petition and notice move the court to set aside proceedings already had as null and void, because such proceedings have not been according to law.

It there had been a final determination between the escheator and traverser in this proceeding, as already indicated, I would hold that the escheat could not be established without the inquest and verdict of a jury under section 2301, as well as a compliance with the other provisions of law. In this proceeding the initiatory notice of escheat to the judge has been given as provided in section 2300 of the general statutes. There has been no inquest of office or public notice to claimants as required by sections 2301 and 2302. Whilst the law may contemplate the inquest of office and notice to claimants as therein provided at an earlier stage of the proceedings, for the escheat of Malone's lands, yet I can discover nothing in the law to prevent these steps still being taken.

I conclude and hold, that it would be competent for the court in which an issue is pending between an escheator and a traverser to allow any defect in the proceedings for escheat to be remedied at any time before a final determination of the issue. As the traverser is in no default, he should not be subjected to the delay or prejudiced in what might result from the granting of the motion at the instance of parties who have not as yet traversed the escheat.

Even if it were not competent for the court yet to allow the deputy escheator to proceed under his notice, I hold it would not be competent for this court to reverse and set aside orders passed in a cause before the court. The effect of the orders in

the cause as well as all other matters involving the regularity of the proceeding will be determined by the court upon the trial upon its merits of the issue between the escheator and the traverser.

It is ordered and adjudged that the motion of Samuel Malone, Henry Malone, Bates Malone, and others, upon petition filed to set aside the proceedings in the above entitled cause, be refused. It is further ordered, that George D. Bryan, deputy escheator, do serve a copy of the notice of escheat of the lands of Thomas W. Malone upon Samuel Malone, Bates Malone, and others, named in the petition accompanying the notice of the motion herein refused, and that each of said parties have leave to traverse said escheat.

The exceptions to these decrees, taken by the several appellants, raise the points stated in the opinion.

*Mr. Henry Buist*, for Buist, administrator.

*Messrs. J. D. Kennedy* and *T. H. Clarke*, for G. W. Malone *et al.*

*Mr. James Simons*, for Lemuel Malone *et al.*

*Mr. W. M. Thomas*, for Henry Malone *et al.*

*Mr. Robert Chisolm*, for J. G. Fawkner *et al.*

*Mr. G. D. Bryan*, for the deputy escheator.

September 20, 1884. The opinion of the court was delivered by

MR. JUSTICE McIVER. These three appeals, under the titles above stated, all grow out of proceedings instituted by Geo. D. Bryan, as deputy escheator for the City Council of Charleston, for the purpose of having certain real estate of the late Thomas W. Malone declared to be escheated and vested in said City Council for the benefit of the Orphan House of Charleston, upon the ground that he died leaving no person who can lawfully claim the same either by purchase or descent.

The facts out of which the questions to be determined arise are

substantially as follows: sometime in 1864 the said Thomas W. Malone departed this life, in the city of Charleston, intestate, leaving sundry lots in the said city, described in the notification of escheat, as well as some personal property. Soon after his death, George Lamb Buist, Esq., was duly appointed administrator of his personal estate, and he has been, and still is, in the receipt of the rents and profits of said real estate. On December 18, 1882, George D. Bryan, as deputy escheator for the City Council of Charleston, served a notification of escheat upon Judge Pressley, the judge of the 1st Circuit, which embraced the city of Charleston. After this notification, the respondent, John G. Fawkner, presented his petition, denying that the said Thomas W. Malone died leaving no heirs capable of inheriting his estate, and on the contrary averring that he and others therein named are the heirs at law and distributees of said estate. On February 3, 1883, Judge Pressley granted an order directing the deputy escheator to serve a copy of the notice of escheat upon the attorney of said Fawkner, with leave to him to traverse the escheat, which traverse was filed on February 10, 1883.

In the meantime, to wit, on February 7, 1883, George Lamb Buist, as administrator of Thomas W. Malone; upon whom a copy of the notice of escheat had been served, filed his petition denying that Thomas W. Malone had died without leaving any person capable of inheriting his estate; stating that he had been informed that the intestate left a sister, who formerly resided in one of the southwestern states, and that he had other connections in the state of Alabama; that he had been served with a notice by the attorney of said Fawkner, claiming that he and others named in the petition of said Fawkner were entitled as next of kin and heirs at law to the estate of the intestate; that an action had been commenced on January 13, 1883, by the said Fawkner against him as administrator and the said Bryan as deputy escheator, to recover the personal estate and to be let into possession of the real estate of said Thomas W. Malone, and for an account of the personalty and the rents and profits of the realty; submitting that no order can properly be made in the premises until notice has been published according to law, calling in all persons claiming to be heirs and distributees of said

Thomas W. Malone, and praying that his rights and interests may be protected in any order that may be made in the premises.

Subsequently to the filing of the petition and traverse of Fawkner, as above stated, but at what date does not appear, Geo. D. Bryan, as deputy escheator, filed his reply, controverting the allegations of Fawkner's petition, and praying that such further proceedings may be had as will give an opportunity to bring in all those who claim to be next of kin of said Thomas W. Malone, so that the rights of all parties may be finally adjudicated. On April 5, 1883, Henry Malone filed his petition and claimed to be an heir at law of said Thomas W. Malone, and on the same day an order was granted requiring the deputy escheator to serve the notice of escheat upon the attorney of said Henry Malone, with leave to traverse the escheat, but it does not appear that any traverse was filed by him.

On April 7, 1883, Judge Cothran, while holding the courts of the first Circuit, granted an order for the clerk to advertise, in accordance with the provisions of section 2302 of the general statutes, calling upon all persons claiming to be entitled to the estate of said Thomas W. Malone to come in and make good their claims. In pursuance of this order, the clerk did publish an advertisement, without date, calling upon the heirs of said Thomas W. Malone "to appear and make claim to his estate before the expiration of six months from the date hereof." Mark Malone and others having presented their petition claiming to be next of kin of said intestate, the court granted an order on June 30, 1883, requiring the deputy escheator to serve a copy of the notice of escheat upon the attorney of the petitioners, with leave to them to traverse the escheat, but it does not appear that any traverse was ever filed by them.

On October 3, 1883, a claim was filed by Charles Malone and others, but no action seems to have been taken thereon. On October 4, 1883, a traverse was filed by Geo. L. Hill, one of the claimants named in the petition of John G. Fawkner, above mentioned. On October 5, 1883, a claim was filed by Geo. W. Malone and others, and no action taken thereon. On October 6, 1883, a petition was filed by Lemuel Malone and others, claiming that they and others, some of whom are infants, whose names are

unknown to the petitioners, are heirs at law and next of kin of the intestate, and as such entitled to his estate, both real and personal; that the mode prescribed by law by which lands are to be declared escheated has not been pursued in the proceedings herein; that the advertisement by the clerk, under the order of April 7, 1883, was not in accordance with the law; and praying that all the proceedings subsequent to the notification of escheat be set aside as null and void; and failing in this, that they may be served with a copy of the notification of escheat, with leave to traverse the same. On October 9, 1883, a traverse was filed by Margaretta Taylor and others, some of the parties named in the above mentioned petition of John C. Fawkner ·as heirs at law of the said Thomas W. Malone.

On the same day of the filing of the petition of Lemuel Malone and others, as above stated, these petitioners, by their counsel, gave notice to the clerk of the court, and to Mr. Bryan, the deputy escheator, that they would move the court at its next session "to set aside all the proceedings in the matter of the proceedings for the escheat of the lands of the said Thomas W. Malone subsequent to the notification of escheat therein, on the ground that the same are null and void, and unauthorized under the laws of the state in such cases made and provided."

On October 23, 1883, Geo. Lamb Buist, as administrator as aforesaid, gave notice to the attorneys representing the various parties of a motion to set aside all the proceedings upon the ground that under section 11 of article X. of the constitution of this state the proceeds "of all estates of deceased persons who have died without leaving a will or heir" are appropriated to the establishment and maintenance of "free public schools, and for no other purposes or uses whatever," and that, therefore, Geo. D. Bryan, as deputy escheator for the City Council of Charleston, has no authority to institute any proceedings for the escheat of lands in the city of Charleston, either for the benefit of the Orphan House of Charleston, or for any other purpose.

These motions were heard at November term, 1883, by Judge Witherspoon. At the hearing, it was contended by the administrator, Mr. Buist, and by those uniting with him in this appeal, that although the 15th section of the act of 1799 (5 *Stat.*, 366),

vesting in the City Council of Charleston for the benefit of the Orphan House of Charleston all escheated property in the parishes of St. Philip and St. Michael, which embrace the city of Charleston, to an amount not exceeding the sum of fifty thousand dollars, had never been in express terms repealed, yet that it was abrogated by the provisions of section 11 of article X. of the constitution of 1868 ; but that if this position could not be maintained, then the City Council, having, as it was conceded, already received the proceeds of escheated property to the amount of $48,648.19, it can only claim the balance of the sum limited in the act of 1799 to $50,000, to wit, the sum of $1,351.81, and that for this purpose they should be required to confine their proceedings to only so much of the property as would yield that balance, notwithstanding the fact that the legislature, by the act of 1878 (16 *Stat.*, 731), had amended the 15th section of the act of 1799, above cited, by increasing the sum therein mentioned from fifty to one hundred thousand dollars, because the act of 1878 was in conflict with the provisions of the constitution above cited.

On January 23, 1884, Judge Witherspoon filed his judgment holding that the provisions of the 15th section of the act of 1799 were not abrogated by the provisions of the constitution of 1868, but that the act of 1878 was in conflict with said constitution, and dismissing the motion of the administrator. From this judgment the administrator appeals, and all the parties claiming to be heirs at law of Thomas W. Malone, except John G. Fawkner and those mentioned in his petition, unite with the administrator in his appeal. Mr. Bryan, the deputy escheator also appeals upon the ground that the Circuit judge erred in holding the act of 1878 unconstitutional.

At the same term, the motion submitted on behalf of Lemuel Malone and others was heard, when it was contended by the moving parties that, inasmuch as the mode of proceeding prescribed originally by the act of 1787, 5 *Stat.*, 46 (the provisions of which are substantially re-enacted in sections 2300–2315 of the General Statutes of 1882), had not been strictly pursued after the notification of escheat had been served upon the judge of the 1st Circuit, all the proceedings subsequent to such notifica-

tion were nullities and should be so declared. On January 22, 1884, Judge Witherspoon filed his judgment, holding that, while there were defects in the proceedings, they were not such as rendered the proceedings void, but that they might be supplied, and refused the motion. He also ordered the deputy escheator to serve a copy of the notice of escheat on the petitioners with leave to traverse the same. From this judgment, Lemuel Malone and the others named in the petition appeal, and all the other parties claiming to be heirs of Thomas W. Malone (except John G. Fawkner and those named in his petition), as well as Mr. Buist, the administrator, join in this appeal.

These appeals raise the following questions: 1st. Whether the provisions of the 15th section of the act of 1799 have been repealed or abrogated by the 11th section of article X. of the constitution of 1868. 2d. Whether the act of 1878, increasing the grant of escheated lands to the City Council of Charleston for the benefit of the Orphan House from fifty to one hundred thousand dollars, is in conflict with said constitutional provision. 3d. Whether the defects in the proceedings instituted by Mr. Bryan, as deputy escheator, are such as to render all of such proceedings, since the notification of escheat, null and void, or whether such defects may not yet be supplied.

I. Title to real estate cannot remain in abeyance; it must be vested in some one. When, therefore, a person seized of real estate dies intestate, the title to such estate vests at once in his heirs, if he leaves any, but if there is no person who can establish that relation, then the title must necessarily at once vest in the State as escheated property. The fact that it may be uncertain or unknown *where* the title does vest, until after a judicial determination of the question in whom the title is vested, does not prevent the immediate vesting of the title in the person really entitled; for the law will regard the title as vested in such person immediately upon the death of the intestate, although it may not then, or for some time afterwards, *be known* where the title has vested. This doctrine is fully supported by authority. *Harlock* v. *Jackson*, 1 *Tr. Con. R.*, 135, reported also in 3 *Brev.*, 254; *City Council of Charleston* v. *Lange*, 1 *Mill. Con. R.*, 454.

Although the title is thus vested in the state immediately upon the death of the intestate leaving no heirs, yet the state will not undertake to dispose of the property until after it has been ascertained in the mode prescribed by law, that the property has in fact escheated, and then only in the mode provided for by the escheat law—by sale—and will not re-grant the land as vacant land. *Bodden* v. *Speigner*, 2 *Brev.*, 321. As is said by Cheves, J., in *City Council* v. *Lange, supra*, "the state forbears to exercise the right which the common law casts upon it, until that right is ascertained."

But while the state thus forbears to exercise the right of disposing of the property until the escheat has been ascertained, or, as it is usually expressed, until office found, it has always exercised the right of granting *its rights* in escheated property to corporations as well as private individuals, whether such property has been already declared escheated or not; and our court has distinctly held, in the case of *Nettles* v. *Cummings*, 9 *Rich. Eq.*, 440, that the legislature may grant future escheats; that is, an act conferring upon the Sumterville Academical Society property theretofore or thereafter escheated, to the amount limited in the act, was a valid grant of property which escheated after the passage of the act as well as before, up to the amount so limited.

It is true that these legislative grantees of escheated property, like the state, cannot make escheated property available, except in the mode prescribed by the escheat law, either through the action of the state escheator or their own escheators, when, as in this case, they are authorized to appoint one. Still, like the state, they are invested with *the right* from the time of the death of the intestate, though they may not be able to enforce such right, so as to reap its fruits until the mode of proceeding prescribed by the escheat law has been pursued. But when that has been done, then their rights have relation back to the time of the death of the intestate. Thus in the case of the *City Council of Charleston* v. *Lange, supra*, in which the plaintiff was doubtless claiming under this same act of 1799, it was held that the City Council was entitled to recover from the administrator, not only the rents and profits of the real estate received by the

administrator which accrued after, but also those which accrued before office found.

This, it seems to us, shows conclusively that where escheated property, or that which may thereafter escheat, has been by legislative grant conferred upon a corporation or individual, such grantee becomes invested with all the rights of the state immediately upon the death of an intestate leaving no heirs, although the enforcement and enjoyment of the fruits of such rights are postponed until the property has been declared escheated in the manner prescribed by law. The practical inquiry, therefore, in this case is, whether the right vested in the City Council of Charleston for the benefit of the Orphan House to all the escheated property in the parishes of St. Philip and St. Michael to an amount not exceeding fifty thousand dollars, by the 15th section of the act of 1799, could be taken away by the provisions of section 11 of article X. of the constitution of 1868.

While it is true that the state retains absolute control over charters which it may grant to municipal corporations, and may, at any time alter or modify or even repeal them altogether, yet it by no means follows that it retains the same control over all the property of such a corporation. The rule upon this subject, as stated by that eminent author, Mr. Justice Cooley, in his work on *Constitutional Limitations*, p. 237, of the 2d edition, is as follows: "When corporate powers are conferred, there is an implied compact between the state and the corporations that the property which they are given the capacity to acquire for corporate purposes, under their charter, shall not be taken from them and appropriated to other uses. If the state grants property to the corporation, the grant is an executed contract which cannot be revoked. The rights acquired, either by such grants or by any other legitimate mode in which such a corporation can acquire property, are vested rights, and cannot be taken away. Nevertheless, if the corporate powers should be repealed, the corporate ownership would necessarily cease, and even when not repealed, a modification of those powers, or a change in corporate bounds, might seriously affect, if not altogether divest, the rights of individual corporators, so far as they can be said to have any rights in public property. And in other ways incidentally, as

well as by direct intervention, the state may exercise authority and control over the disposition and use of corporate property, according to the legislative view ·of what is proper for the public interest, and just to the corporator, subject only, we think, to this restriction, that the purpose for which the property was originally acquired should be kept in view, so far as the circumstances will admit, in any appropriation that may be made of it."

In the celebrated *Dartmouth College Case*, 4 *Wheat.*, 518, where the whole subject of the control of corporations by the government was most ably and elaborately discussed, the court declared that while the charter of a municipal corporation was not like the charter of a private corporation, a contract, yet that municipal corporations could not be deprived of their vested rights of property. As Story, J., at page 694–5, says: "It may also be admitted that corporations for mere public government, such as towns, cities, and counties, may, in many respects, be subject to legislative control. But it will hardly be contended that, even in respect to such corporations, the legislative power is so transcended that it may, at its will, take away the private property of the corporation or change the uses of its private funds acquired under the public faith. Can the legislature confiscate to its own use private funds which a municipal corporation holds under its charter, without default or consent of the corporators? * * * From the very nature of our government the public faith is pledged the other way, and that pledge constitutes a valid compact, and that compact is subject only to judicial inquiry, construction, and abrogation." Again, at page 698, he says: "The truth is that the government has no power to revoke a grant, even of its own funds, when given to a private person, or a corporation, for special uses. It cannot recall its own endowments granted to any hospital, or college, or city or town, for the use of such corporations." See also *Terrett* v. *Taylor*, 9 *Cranch*, 43, and *Town of Pawlet* v. *Clark*, *Ibid*, 292.

In *Fletcher* v. *Peck*, 6 *Cranch*, 87, it was settled that a legislative grant of property was an executed contract and within the protection of that clause of the constitution of the United States which forbids a state from passing any law impairing the obligation of contracts. Judge Cooley, in commenting on this case

and showing that every grant to a municipal corporation does not constitute a contract, says, at page 277 of his work on *Constitutional Limitations*, 2d edition: "If, however, a grant is made to a municipal corporation charged with a trust in favor of an individual, private corporation, or charity, the interest which the *cestui que trust* has under the grant may sustain it against legislative revocation; a vested equitable interest being property in the same sense and entitled to the same protection as a legal."

In view of these principles, thus authoritatively settled, we think it clear that the provisions of section 11, article X., of the constitution cannot have the effect of annulling or repealing the legislative grant of all escheated property in the parishes of St. Philip and St. Michael, to the extent of fifty thousand dollars, to the City Council of Charleston for the benefit of the Orphan House of that city.

In the argument here it was contended that, inasmuch as the legislature had, in numerous instances since the passage of the act of 1799. made special grants of escheated property in the city of Charleston to private individuals, the City Council, by neglecting to assert its rights to such property, had forfeited its rights under the act of 1799 to the extent of the value of the escheated property so lost to it, and that by taking into account the value of the property so lost by its neglect, the City Council should be regarded as having already received the full amount secured to it by the act of 1799. No such question seems to have been raised or considered in the Circuit Court, and therefore it is not properly before us. But even if it were, the remarks of the court, through Johnston, Ch., in the case of *Nettles* v. *Cummings*, in response to a similar position taken in that case would seem to be conclusive. He says: "As to the objection that the society by neglecting to enforce its rights in former cases of escheated property has forfeited its rights to the extent of the property thus lost—is there anything in the statutes compelling it to take its remedy out of the first property which presents itself? Is not the authority plainly conferred to take the remedy out of whatever escheated property it might select, provided it should not raise more than the amount limited in the acts?"

II. As to the constitutionality of the act of 1878. It is quite

clear, upon the principles hereinbefore announced, that this act is unconstitutional. The proceeds of all escheated property in the state having been appropriated by the constitution of 1868 (art. X., § 11), "as a state school fund," the legislature certainly had no power, ten years after such appropriation, to divert any portion of the proceeds of such property to any other purpose. The act of 1878 was an attempt by the legislature to make a new and additional grant of escheated property in the city of Charleston, to the amount of fifty thousand dollars, to the City Council of Charleston, for the benefit of the Orphan House, but as all of such property had already been devoted by the supreme law of the land to another purpose, such attempt must necessarily fail, as beyond the competency of the legislature.

It is argued, however, that the Orphan House of Charleston is a free public school, "combining with it the feature of support for poor orphan children," and, as such, that it falls within the constitutional provision in regard to the proceeds of escheated property. As we understand it, however, the Orphan House is not a state but a city institution. It is not under the control of the state, but of the city authorities or commissioners appointed by them. The school attached to it is not under the control of the superintendent of education, or of the school commissioners. Its doors are not open to all, but only to "all poor orphan children, and children of poor, distressed, or disabled parents, as shall be deemed proper objects of admission by the commissioners;" and while it is undoubtedly a noble charity, and a great credit to the city in which it has been established, it cannot, in any proper sense of the terms, be regarded as a "free public school," and as such, entitled to participate in the "state school fund." Hence, after the proceeds of all escheated property have been devoted by the constitution to the "state school fund," which "shall be faithfully appropriated for the purpose of establishing and maintaining free public schools, and for no other purposes or uses whatever," the legislature has no power to divert any portion of such proceeds to the support of the Orphan House.

III. The only remaining inquiry is, whether the defects in the proceedings instituted by Mr. Bryan, as deputy escheator, to have the real estate of the late Thos. W. Malone, in the city of

Charleston, escheated, are such as to render all of such proceedings subsequent to the notification of escheat (to which no objection seems to be raised) null and void.

Section 2300, of the general statutes of 1882, requires that a notification of escheat shall be served on the judge of the Circuit within which the supposed escheated lands lie, and this requirement seems to have been properly complied with. Section 2301 requires the judge presiding at the court next ensuing after the service of the notification, to cause the jury to make a true inquest of such supposed escheated lands, and certify their verdict to the escheator, who is required to record the same in a book to be kept for the purpose, and return the original within two months to the office of the clerk of the court, to be there filed and kept as a record. None of these various requirements were complied with.

Section 2302 requires the clerk, upon the return of the inquest, to cause to be advertised in a newspaper the first week in every month for six months, a notice containing certain specified particulars, calling upon all persons claiming under the person last seized of the supposed escheated lands to appear and make claim; and section 2303 provides that if no person shall appear and make claim within twelve months after the expiration of the time prescribed for advertising, the clerk shall issue process signed by the judge to the escheator, pronouncing the said lands escheated and vested according to law, and directing him forthwith to sell the same upon the usual notice. The provisions of these two last mentioned sections were not complied with, but under an order of the judge, the clerk did advertise for claimants (his advertisement being without date) for six months, requiring them to come in and file their claims, not, however, within twelve months after the expiration of the time prescribed for advertising, as required by the statute, but within six months from the date of his advertisement.

Section 2304 prescribes the manner in which the escheator shall advertise the sale and the terms thereof. Section 2305 provides for the division of the land, if it exceeds six hundred acres, into smaller parcels. Section 2306 provides that, "if any person shall appear, within five years, and make good title to

such lands in the Court of Common Pleas, on an issue tried, he shall forthwith receive adequate compensation." Section 2307 reads as follows: "Any person without delay, shall be heard on a traverse, in the Court of Common Pleas, on a petition setting forth his right, and the said lands shall be committed to him, if he shall show good evidence of his title to hold until the right shall be found and discussed for the state and the claimant; such claimant finding sufficient security to prosecute his suit with effect, and without delay, and to render to the state the yearly value of such lands, if the right be found for the state." The provisions of the remaining sections of the chapter contain nothing material to the present inquiry.

From this brief summary it is quite manifest that no valid sale of the lands alleged to be escheated can be made until the requirements of the statute, which have been omitted, are complied with, but it does not by any means follow that these omissions will invalidate the traverse already filed by some of the claimants who are in no default whatever. The object, clearly, of the requirements which have been omitted, especially that in reference to the advertisement, is solely to give full and ample notice to all persons who may have any claim to the supposed escheated lands to come in and make good their claim before they are disposed of by sale. Hence, if any person chooses to come in without the publication of the notice as required by statute, he will be bound by all subsequent proceedings, just as an absent defendant would be who chooses to come in without due publication of notice to absent defendants; but those who do not come in will not be bound until after all the requirements of the statute are complied with, and therefore the court would not be justified in ordering a sale until such requirements had been complied with, because until then it could not be known that all persons who might have a claim had been offered and had neglected the opportunity to come in and assert their claims. But how the omission of any one of those requirements can affect a traverse of one who chooses to come in before all the formalities are complied with, we are at a loss to conceive.

Each traverse is a separate case. Such was the practice adopted in *McCaw* v. *Galbraith*, 7 *Rich.*, 74, and such must

necessarily be the practice from the very nature of the proceeding. The fact that one traverse may fail in the issue which he has tendered, has no effect whatever upon a traverse that may be filed by another. Indeed, the requirements of the statute, which appellants claim were omitted in these proceedings, are not conditions precedent to the filing or trial of a traverse, but only to the order of sale. There is no reason why a traverse should not be filed and tried before the expiration of the time prescribed for the notice to all claimants to come in and make good their claims. Certainly the law does not contemplate that a claimant shall not file his traverse and have it tried until after the expiration of eighteen months from the date of the first publication of the notice. On the contrary, the statute expressly provides that, "any person without delay shall be heard on a traverse in the Court of Common Pleas, on a petition setting forth his right." Not a word is in the statute even implying that a person who wishes to traverse must wait until after all the steps *necessary to a sale* have been taken before filing his traverse and having it heard; but on the other hand the statute expressly declares that his traverse shall be heard, without delay, on a petition setting forth his right.

Now if a claimant may file his traverse and have it tried before the expiration of the time within which any person who may have a claim is allowed to come in and make good his claim, that is within twelve months after the expiration of the time (six months) prescribed for advertising, making in all eighteen months, we see no reason why a person, if he chooses so to do, may not file his traverse and have it tried before the notice has been published at all in accordance with the requirements of the statute, the only effect of such trial being to determine the issue between himself and the escheator, without prejudicing, in any manner, the rights of any other traverse. We see no error, therefore, on the part of the Circuit judge in refusing the motion submitted by Lemuel Malone and others to set aside all the proceedings subsequent to the notification of escheat.

The judgment of this court is that both of the judgments of the Circuit Court, which have been appealed from, be affirmed.