16626

WELLING v. CLINTON NEWBERRY NATURAL GAS
AUTHORITY *ET AL.*

(71 S. E. (2d) 7)

418

*Mr. R. Aubrey Harley,* of Newberry, *for Appellant,* cites:

*Messrs. C. E. Saint-Amand,* of Newberry, *Robert S. Owens,* of Clinton, and *Sinkler, Gibbes & Simons,* of Charleston, *for Respondents,* cite:

May 9, 1952.

OXNER, Justice.

The parties to this action seek a determination of the validity of Act No. 789 of the 1952 Acts of the General Assembly, 47 St. at L. 1958, entitled:

"An Act to create the Clinton Newberry Natural Gas Authority, to define its service area, to prescribe its functions and powers, to authorize said Authority to borrow money, to confer upon it all powers contained in Chapters 187 and 189, Code of Laws of South Carolina for 1942, as now or hereafter amended, to make provision for the disposition of the revenues and earnings of such Authority, and to make it unlawful to hurt or damage the system or property of the Authority or to obtain gas therefrom except in accordance with the regulations of the Authority, and to prescribe penalties for violations thereof."

. Plaintiff asserts that the foregoing act contravenes numerous provisions of the Constitution of this State. The court below decided all questions adversely to plaintiff and sustained the validity of the act except in one particular hereinafter mentioned.

The Transcontinental Gas Pipe Line Company constructed and has in operation a line running from the gas fields of the Southwest to certain states in the Northeast, which traverses the western part of South Carolina. Transcontinental apparently desired only to sell in the northeast and was not interested in distributing natural gas in South Carolina. Among other municipalities in the Piedmont section of South Carolina, the towns of Clinton and Newberry intervened in the proceedings before the Federal Power Commission and sought an allocation of natural gas. An allotment was made but the Examiner of the Commission suggested that the project would be more feasible for Clinton and Newberry if undertaken jointly. The sponsors of the project thereupon sought the enactment of the legislation in controversy, which contains the following recitals:

"Whereas, it has been determined that the most economical method by which Clinton and Newberry can avail themselves of such gas is through the construction of a single transmission line, extending from Newberry through Clinton, and thence to the main transmission line of the Transcontinental Gas Pipe Line Company, at a point at or near Fountain Inn, where it will be connected with the transmission line of the Transcontinental Gas Pipe Line Company, and which line will serve distribution systems for each of Clinton and Newberry and their surrounding territories; and

"Whereas, it has been further determined that the most propitious method of effecting the construction of such project and the financing of the same is through the establishment of an authority which shall be empowered: (1) to cause the construction of the project; (2) to finance the same through loans payable from the earnings of such system;

and, (3) to operate and maintain the same for the benefit of the municipalities."

The act provides that the Authority shall consist of seven members, six of whom shall be members ex officio and empowered to select the seventh. The ex officio members are the mayors of Clinton and Newberry, and two members from the council of each municipality to be designated by the body they represent. It is stated in the act: "In making the foregoing ex officio designations, the General Assembly finds that the successful operation of the natural gas system has a distinct relation to the welfare of Clinton and Newberry. It has, therefore, determined that those responsible for the operation of such municipalities should likewise participate in the operation of the Authority."

Stated generally, the Authority is authorized to construct, operate and maintain a transmission line and distribution system to serve Clinton and Newberry and the surrounding areas. It is specified in the act that "the service area of the Authority shall begin at a point on U. S. Highway 76, midway between the present municipal limits of Laurens and Clinton, and shall extend along said U. S. Highway 76 southeastwardly to a point ten miles southeastwardly from the southernmost boundary of the present city limits of Newberry and shall extend on either side of said Highway five miles in each direction." Within this service area are the incorporated towns of Clinton, Newberry and Prosperity and the unincorporated towns of Joanna, formerly Goldville, and Kinards.

The Authority is authorized to enter into contracts for the acquisition of either natural or manufactured gas, to sell such gas on such terms and rates as may be fixed by it, to exercise the power of eminent domain, to borrow money and issue bonds payable from the revenues to be derived from the operation of said system, to avail itself of the provisions of Chapters 187 and 189 of the 1942 Code, and to make necessary rules and regulations for the management

and operation of said gas system. Both the property and obligations of the Authority are exempted from taxation.

Pursuant to the terms of the act, the Authority has employed engineers, received bids and is now in a position to award a contract for the construction of the system. It appears that it will be necessary to issue revenue bonds in the sum of approximately $3,000,000.00, which can be sold on a satisfactory basis, if the validity of said bonds is assured.

The first contention made is that the act is special legislation of the sort prohibited by Section 34, of Article III of the Constitution. It is said that Chapter 187 of the Code empowering all municipal corporations to construct and operate natural gas systems is a general law precluding a local act relating to said subject. There is no merit in this contention. The General Assembly was fully empowered to deal with the special situation presented. Indeed, in Section 9240 of Chapter 187, 1942 Code, there is recognition that special situations might arise necessitating further legislation by the followisg provision:

"Any counties, townships, cities or incorporated towns of the State, desiring to obtain the benefit of the provisions of this chapter through uniting or co-operating in joint projects or undertakings serving joint communities interests are authorized to co-operate with each other under agreements made by their governing authorities through resolutions or ordinances *either with or without statutory enactments creating new districts* for the purpose of such projects." (Emphasis ours.)

The device used in the act under consideration is not new in South Carolina. We have sustained legislation creating, among others, an authority to construct and operate a hydro-electric project, *Clarke v. South Carolina Public Service Authority,* 177 S. C. 427, 181 S. E. 481, and an authority to erect homes for families of low income, *Benjamin v. Housing Authority of Darlington County,* 198 S. C. 79, 15 S. E. (2d) 737. We have also upheld special districts created for

the purpose of furnishing water and sewer facilities. *Rutledge v. Greater Greenville Sewer District,* 139 S. C. 188, 137 S. E. 597; *Floyd v. Parker Water and Sewer Sub-district,* 203 S. C. 276, 17 S. E. (2d) 223.

We next consider the contention that the provision relating to ex officio membership of the governing board of the Authority violates that portion of Section 2, Article 2 of the Consitution which provides that "no person shall hold two offices of honor or profit at the same time". It was distinctly recognized in *Ashmore v. Greater Greenville Sewer District,* 211 S. C. 77, 44 S. E. (2d) 88, 173 A. L. R. 397, that ex officio membership of the character here involved did not contravene this constitutional provision.

The question is raised that the General Assembly was not empowered to permit the Authority to engage in the business of purchasing and selling gas. It is said that this is not a governmental function. This question is decided adversely to the plaintiff under the cases of *Park v. Greenwood County,* 174 S. C. 35, 176 S. E. 870, and *Clark v. South Carolina Public Service Authority, supra,* 177 S. C. 427, 181 S. E. 481, 486. In the last mentioned case the Court said, "there is no question as to the manufacture and sale of power being a public and governmental function." There is no valid distinction between the power of a unit of government to manufacture and sell electricity and to buy and sell natural gas. Each, under the decisions mentioned, is a public and governmental function. This being true, there is no merit in the further contention that the provisions of the act exempting the property and obligations of the Authority from taxation are invalid. *McNulty v. Owens, Mayor,* 188 S. C. 377, 199 S. E. 425.

We next consider the argument that the act in effect gives the Authority a monopoly in the area proposed to be served which, it is said, violates the provisions of Section 13, Article IX of the Constitution. As heretofore pointed out, the act defines the area in which the Authority

is to operate and states that this was done "in order that there shall be no competition between the system of the Authority and publicly operated natural gas systems, now or hereafter constructed". It is further provided: "No municipality or other public authority or body shall operate a competing system within this service area; provided, that this provision shall not be construed to deny others the right to construct transmission lines through the area." It will be noted that the Authority is not given a monopoly. Private firms, desirous of selling gas within the service area, are free to do so. The act only undertakes to prevent competition from other public agencies. The Federal Power Commission, in allotting the gas, must be deemed to have found that public necessity and convenience demand this service. We see no constitutional objection in excluding other public agencies from the area to be served by the Authority. The General Assembly may limit and define the functions of the agencies created by it. It is our conclusion that the act under consideration does not violate Section 13, Article IX of the Constitution.

That portion of the act which permits the Authority to fix the rates on gas sold is attacked upon the ground that this is a function exclusively vested in the Public Service Commission. A similar contention was made and overruled in *Clark v. South Carolina Public Service Authority, supra,* 177 S. C. 427, 181 S. E. 481.

We find no merit in the contention that the power of eminent domain given the Authority is invalid. Having held that the functions committed to it are public and governmental in nature, it follows that it was proper to grant the power of eminent domain. *McNulty v. Owens, Mayor, supra,* 188 S. C. 377, 199 S. E. 425.

The contention is made that the portion of the act heretofore mentioned which provides that no municipality or other public agency shall operate a competing system within the area prescribed by the act violates

Article 8, Section 1, of the Constitution, which reads as follows:

"The General Assembly shall provide by general laws for the organization and classification of municipal corporations. The powers of each class shall be defined so that no such corporation shall have any powers or be subject to any restrictions other than all corporations of the same class. Cities and towns now existing under special charters may reorganize under the general laws of the State, and when so reorganized their special charters shall cease and determine."

It is claimed that the towns of Clinton, Newberry and Prosperity are denied the right, granted to all municipal corporations by Chapter 187 of the 1942 Code, to operate a municipal gas system. In disposing of this contention, the Court said:

"Insofar as the Town of Prosperity is concerned, I am clearly of the opinion that this provision of the Act is void. If all municipal corporations are to be permitted to operate natural gas systems, then no valid reason exists to deny that right to one particular town. However, the reasoning applicable to Prosperity is not applicable to Clinton and Newberry for the reason that the Act merely defines the method by which Clinton and Newberry may possess and have the benefit of natural gas systems. It is true that the right to operate these systems is vested in an authority rather than in the corporate authorities of these respective towns, but nonetheless the right exists in the municipalities to possess and have the benefit of the system. * * * The Authority is the agency through which the General Assembly has seen fit to devolve the function of constructing and operating a natural gas system for each of Clinton and Newberry. The systems so constructed 'belong' to Clinton and Newberry just as much as if they were constructed by the respective municipal councils of these towns. They receive both the benefit and the profits therefrom. Hence, no power granted to other municipal corporations is denied to Clinton and Newberry. I may further note that the Authority itself

is powerless to function without the cooperation and consent of the local authorities of these towns, for the reason that it may not make use of the streets or public places within those towns in which to lay pipes and mains without the consent of the corporate authorities of these towns."

We are in accord with the foregoing views with reference to the towns of Clinton and Newberry. The conclusion reached by the court below seems to be sustained by the concurring opinion of Mr. Justice Woods in *City of Union v. Sartor,* 91 S. C. 248, 74 S. E. 496. It should be mentioned that under the terms of the act, the revenues derived from the operation of the gas system are first to be applied in discharging the Authority's obligations for debt service, operation and maintenance, but after that the revenues are to be divided on an equitable basis between the towns of Clinton and Newberry, for whose benefit the Authority was created. Moreover, these towns are not complaining but are asking for the approval of the project.

There is no appeal from that portion of the order with reference to the town of Prosperity.

At this point we consider exception 12 wherein it is asserted that the holding of the court with reference to the town of Prosperity rendered the entire act invalid. We do not think so. *Gillespie v. Blackwell,* 164 S. C. 115, 161 S. E. 869; *Gaud v. Walker,* 214 S. C. 451, 53 S. E. (2d) 316; *Kalber v. Redfearn,* 215 S. C. 224, 54 S. E. (2d) 791.

It is next contended that the towns of Newberry and Clinton cannot engage in this venture without the approval of the electors residing in said municipalities under Article 8, Section 5 of the Constitution, which reads as follows:

"Cities and towns may acquire, by construction or purchase, and may operate, waterworks systems and plants for furnishing lights and ice manufacturing plants and may furnish water and lights and ice, to individuals, firms and private corporations for a reasonable compensation: Pro-

vided, That no such construction or purchase shall be made except upon a majority vote of the electors in said cities or towns who are qualified to vote on the bonded indebtedness of said cities or towns.''

While the question is not free from difficulty, we do not think the foregoing constitutional provision is applicable to a natural gas system designed to furnish heating facilities. There is no showing that gas furnished by the Authority is to be used for lighting purposes.

The next question for determination is stated as follows: "Do the covenants obligating the Authority to maintain rates sufficient to discharge certain obligations to be undertaken in connection with the issuance of its bonds constitute an unconstitutional delegation of legislative authority?" The answer is no. *Clarke v. South Carolina Public Service Authority, supra,* 177 S. C. 427, 181 S. E. 481; *Cathcart v. City of Columbia,* 170 S. C. 362, 170 S. E. 435.

Finally, it is contended that the Authority may not avail itself of any of the powers granted by Chapters 182, 187 and 189, 1942 Code, or by Article IV, Act 329 of the 1951 Acts of the General Assembly, 47 St. at L. 479 *et seq.* for the reason that the Authority Act cannot validly incorporate by reference such statutes. There is no merit in this contention. *Lyles v. McCown,* 82 S. C. 127, 63 S. E. 355; *Santee Mills v. Query,* 122 S. C. 158, 115 S. E. 202.

All exceptions are overruled and the order appealed from is in all respects affirmed.

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.