236 S.C. 173 (1960)
113 S.E.2d 534
F. W. SOSSAMON, Sr., et al., as Citizens and Taxpayers for Themselves and all other Citizens and Taxpayers similarly aggrieved, Appellants,
v.
GREATER GAFFNEY METROPOLITAN UTILITIES AREA et al., Respondents.
Ex parte B.C. VASSY et al., as Commissioners of Public Works of the City of Gaffney, Intervenor-Appellants.
17631
Supreme Court of South Carolina.
March 23, 1960.
*174 *175 Wade S. Weatherford, Jr., Esq., of Gaffney, for Appellants.
Jonathan Z. McKown, Esq., of Gaffney, for Respondent, Utilities Area.
Messrs. Huger Sinkler, Albert Simons, Jr., and Sinkler, Gibbs & Simons, of Charleston, for Intervenor-Appellants, B.C. Vassy et al..
*176 Messrs. F.D. Rainey, of Greenville, L.A. Odom, of Spartanburg, C.W.F. Spencer, Jr., of Rock Hill, William H. Ehrhardt, of Charleston, and William A. Robinson, Jr., of Easley, for Amici Curiae.
Messrs. Huger Sinkler, Albert Simons, Jr., and Sinkler, Gibbs & Simons, of Charleston, for Intervenor-Appellants, *177 B.C. Vassy et al., in Reply.
March 23, 1960.
OXNER, Justice.
This action was instituted by certain citizens and taxpayers of Cherokee County, some of whom live within and others without the corporate limits of the City of Gaffney, for the purpose of determining the constitutionality of Act No. 1042 of the 1958 Acts of the General Assembly, Aug. 27, 1957, 50 St. at L. 2195, as amended by Act No. 373 of the 1959 Acts of the General Assembly, May 28, 1959, 51 St. at L. 741. The case was heard by the Court below on the pleadings and an agreed statement of facts, resulting in an order upholding the constitutionality of this legislation. This appeal by the taxpayers followed. During the pendency of the appeal to this Court, the Commissioners of Public Works of the City of Gaffney were permitted to intervene and become parties to the action. The cities of Greenville, Spartanburg, Rock Hill, Charleston and Easley, claiming that their waterworks systems were vitally affected by some of the questions raised, sought and were granted permission to file a brief amicus curiae.
It is found in this Act that that part of Cherokee County lying outside of the corporate limits of the City of Gaffney has developed and expanded to the extent that some portions are now congested and inadequately served by water and sewerage facilities; that the public health, welfare and convenience *178 require that such areas be furnished with these facilities; and that the Board of Public Works of the City of Gaffney can furnish the needed services to outside areas in the county if proper distribution systems are provided.
In order to provide water and sewerage facilities for these congested areas, the Act creates a body corporate to be known as the Greater Gaffney Metropolitan Utilities Area, embracing all of Cherokee County lying outside the present corporate limits of the City of Gaffney and the Town of Blacksburg, to be governed by five members appointed by the Governor on recommendation of the delegation from that County, which body is referred to as the Commission. There is a proviso that the Commission may contract with the Town of Blacksburg with regard to the inclusion of said municipality within the jurisdiction of the Commission.
The Commission is empowered to make surveys, investigate and determne what areas need the facilities and declare same to be congested sections. When so found, the Commission is authorized to specify the nature, type and extent of facilities needed and proceed with the construction of same from any funds available. In determining what areas need these facilities and the extent thereof, the Commission is to act in cooperation with the Board of Public Works of the City of Gaffney but the final determination rests with the Commission. When the Commission finds any area has existing facilities but such are insufficient or inadequate, it is authorized to replace or extend and enlarge same. When this is done, equitable adjustment is to be made with the Board of Public Works.
It is further provided:
"All facilities now or hereafter constructed within the Area, whether at the expense of the Commission or the City or the Board, shall be connected with and served by the present or future sources of water supply or sewer facilities, trunk or main line, disposal plants and other primary facilities of the City or Board, and the City and Board shall furnish *179 all such facilities for all such systems as may now or hereafter be constructed within the Area." (Section 10.)
"The City and the Board shall maintain and keep in serviceable order all facilities now in existence or hereafter constructed within the Area, for which the City and Board shall be entitled to reasonable compensation from the water and sewer charges, respectively, accruing within the area." (Section 11.)
The amending Act states that "the Commission and the Board of Public Works shall agree upon the reasonable pro rata share of the expenses of the operation of the plant facilities." It further provides that the Board "shall keep a separate account of all costs of construction, maintenance and service charges and, after deducting these items, shall pay the balance over to the county treasurer."
Section 20 of the original Act is as follows:
"The rates to be charged for utilities services within the Area shall be fixed by the Commission, but with adequate provision for reimbursement to the County or the City and the Board for any amounts advanced by them, and for further construction, extension and expansion within the Area."
In order to provide funds for construction and operation, the Act authorizes Cherokee County from its general funds to lend to the Commission the sum of $300,000.00. It further authorizes the Commission to issue bonds in an amount not exceeding $500,000.00 for the payment of which there is to be pledged the income from the facilities within the Area.
Finally, the Act provides:
"If the Commission at any time shall determine that it will be more advantageous to the Area to assume the entire operation of its own facilities, it is hereby vested with the authority to do so. If in accordance with this section the Commission assumes the entire operation of the facilities within the Area it shall make such annual adjustment or accounting with the City and the Board as may be equitable and just." (Section 15.)
*180 "It is the intent and purpose of this act that the ownership of the facilities and of the income therefrom within the corporate limits of the City and within the Area shall ultimately be entirely separate and distinct, with the ownership thereof vested in the City and the Board and the Area, within their respective territories. All facilities and systems within the Area shall be the sole property of the Area, as a body politic and corporate, and shall be governed by the Commission, but shall be serviced and maintained by the City and the Board, with due allowance for the cost of maintenance and service, proportionate expense of plant facilities, maintenance fund and proportion of overhead to the City and the Board, and all remainder to be paid into the special fund herein provided." (Section 19.)
The Board of Public Works of the City of Gaffney was created by Act No. 389 of the 1907 Acts of the General Assembly, Feb. 19, 1907, 25 Stat. at Large, p. 808. Initially it was necessary to issue general obligation bonds of the city to defray the cost of the primary water facilities. For a time an ad valorem tax was levied to meet principal and interest requirements but later the revenues from the system became sufficient for this purpose. The stipulated facts show that approximately 25% of the water used is consumed by customers living outside the corporate limits. From this source the Board derives about one-third of its gross income from water. Those residing outside are charged a higher rate than those residing within the city. The cost of constructing outside lines has been borne by the individuals served. The only outlay by the Board has been the cost of furnishing engineering and supervisory service.
Counsel disagree as to whether the act contemplates compensation to the Board for use of its primary facilities. The Commission contends that it does. The Board of Public Works asserts that under the Act it is only to be reimbursed for costs in constructing lines in the area and maintaining them. We are inclined to the construction advanced by the Board. Be that as it may, counsel for the Commission frankly *181 states in his brief, that as to services rendered outside the corporate limits, "The Act cuts out profits of the City of Gaffney."
While furnishing water by a city to its inhabitants is now, although not formerly, regarded as a proper municipal function, a city waterworks system has also been characterized as of a commercial nature. Green v. City of Rock Hill, 149 S.C. 234, 147 S.E. 346, 356. The Court there said:
"While in this state it is settled that the operation of water works by a municipality is so far governmental in character as to absolve the corporation from liability sounding in tort (Black v. City of Columbia, 19 S.C. 412, 45 Am. Rep. 785), there can be no doubt that in the fiscal aspect thereof the operation and maintenance of such utility partake largely of the nature of a commercial or business enterprise. Indeed, by the great weight of authority in other jurisdictions the commercial nature of the enterprise is so far held to be controlling as to require the conclusion that the operation of a water works system is a function undertaken by a municipality in its private or proprietary capacity."
Article 8, Section 5 of the Constitution authorizes cities and towns to acquire and operate waterworks systems and to furnish water to "individuals, firms and private corporations for a reasonable compensation." In Paris Mountain Water Company v. City of Greenville, 110 S.C. 36, 96 S.E. 545, 549, the Court, in speaking of this section, said: "These words do not expressly or by necessary implication limit the service to individuals, firms, and private corporations situate within the corporate limits." And it has been held that the right given by this Section may not be withdrawn by the Legislature. Green v. City of Rock Hill, supra, 149 S.C. 234, 147 S.E. 346.
Section 59-531 of the 1952 Code permits any city or town owning a water plant to enter into a contract with any person outside its corporate limits but contiguous thereto to furnish such person water at such rates *182 as may be mutually agreed upon. This statute imposes no duty on a city to sell its surplus water to those living outside its corporate limits. It may choose not to do so. Childs v. City of Columbia, 87 S.C. 566, 70 S.E. 296, 34 L.R.A., N.S., 542.
A board of public works is not a separate corporation but a mere municipal agency through whose management and control the General Assembly has required that the municipality shall operate and manage its waterworks. City of Union v. Sartor, 91 S.C. 248, 74 S.E. 496; City of Spartanburg v. Blalock, 223 S.C. 252, 75 S. E. (2d) 361.
We think the Act violates Article 8, Section 1 of the Constitution which reads in part: "The General Assembly shall provide by general laws for the organization and classification of municipal corporations. The powers of each class shall be defined so that no such corporation shall have any powers or be subject to any restrictions other than all corporations of the same class."
The Act imposes upon the City of Gaffney the duty of furnishing water to those outside its corporate limits. Other municipalities may choose not to do so. This obligation placed upon the city must be discharged without profit. All other municipalities are at liberty to charge "reasonable compensation" and make a profit on utility service outside their corporate limits. Under the Act the right to contract with outside customers given by Section 59-531 to all municipalities is denied to the City of Gaffney. It has no voice in fixing the rates to be charged to such customers. This power is vested in the Commission. The autonomy of the Board of Public Works of the City of Gaffney would be seriously impaired if the Act were upheld. The right of the Board to determine whether it will serve outside customers is one of great importance. To require it to do so might at some time necessitate an enlargement of its water supply which has been acquired and maintained by taxes and revenues paid by its own citizens. The Act discloses no basis for this discrimination *183 against the City of Gaffney. The facts found in the Act are no different from those existing around other municipalities in South Carolina. It is common knowledge that in most, if not all, of them there has been considerable surburban growth necessitating in many instances water service and other utilities. In some cases these needs have been met by extending the corporate limits to include the contiguous areas. This remedy has not been pursued here. Instead it is sought to impose on the City of Gaffney the duty to supply water and sewerage facilities to the entire county  a burden not placed on any other municipality. If Gaffney may be required to perform these functions, there is no reason why it could not be required to furnish other municipal services, such as electricity, garbage collection, fire and police protection. Surely it would not be contended that city extension may be indirectly accomplished in this manner and thereby relieve those living outside from bearing their full share of the costs of municipal services. It is true that some suburban areas have been given facilities ordinarily furnished by municipalities through the creation of special districts. Floyd v. Parker Water and Sewer Sub-District, 203 S.C. 276, 17 S.E. (2d) 223. But in doing so there was no effort to impose burdens upon the municipality to which such area was adjacent.
Our conclusion that the Act contravenes Article 8, Section 1 of the Constitution is sustained by the following decisions: Carroll v. Town of York, 109 S.C. 1, 95 S.E. 121; Beattie v. City Council of City of Greenville, 113 S.C. 541, 102 S.E. 751; Floyd v. Calvert, 114 S.C. 116, 103 S.E. 82; Rutledge v. City of Greenville, 155 S.C. 520, 152 S.E. 700; Thomas v. Macklen, 186 S.C. 290, 195 S.E. 539; Gaud v. Walker, 214 S.C. 451, 53 S.E. (2d) 316; Welling v. Clinton Newberry Natural Gas Authority, 221 S.C. 417, 71 S.E. (2d) 7; Town of Forest Acres v. Town of Forest Lake, 226 S.C. 349, 85 S.E. (2d) 192.
We also think the Act is obnoxious to Article 8, Section 5 of the Constitution which grants to all municipalities within the State the right to acquire and operate *184 a waterworks system. As previously pointed out, this right cannot be denied by the Legislature, neither do we think it may be restricted in the manner proposed by this legislation. City of Tucson v. Polar Water Co., 76 Ariz. 126, 259 P. (2d) 561. When under this constitutional grant a municipality establishes a waterworks system for the benefit of its inhabitants, the Legislature may not without its consent and without compensation appropriate in whole or in part such water system to the use of the inhabitants of another governmental unit. The Court in In re Malone's Estate, 21 S.C. 435, quoted with approval the following from Cooley's work on Constitutional Limitations: "When corporate powers are conferred, there is an implied compact between the state and the corporations that the property which they are given the capacity to acquire for corporate purposes, under their charter, shall not be taken from them and appropriated to other uses." There was further quoted the following from the celebrated Dartmouth College Case, Trustees of Dartmouth College v. Woodward, 4 Wheat. 518, 4 L.Ed. 629: "It may also be admitted that corporations for mere public government, such as towns, cities, and counties, may, in many respects, be subject to legislative control. But it will hardly be contended that, even in respect to such corporations, the legislative power is so transcended that it may, at its will, take away the private property of the corporation or change the uses of its private funds acquired under the public faith."
It is argued that the effect of the Act is to create a water and sewer district to serve the inhabitants of Cherokee County outside the corporate limits of the City of Gaffney and that the constitutionality of a special purpose district of this kind has been uniformly upheld. Mills Mill v. Hawkins, 232 S.C. 515, 103 S.E. (2d) 14, and cases therein cited. But in none of the acts involved in these cases was there any effort to impair the functions of the corporate authorities of a municipality or to deny a municipality the right to determine how its surplus water shall be used.
*185 The foregoing conclusions make it unnecessary for us to pass upon the other grounds upon which this legislation is attacked.
The Act is adjudged to be invalid and the circuit decree is reversed.
STUKES, C.J., and TAYLOR, LEGGE and MOSS, JJ., concur.