8175

CITY OF UNION v. BOARD OF COMMISSIONERS OF PUBLIC
WORKS.

1. WATER AND LIGHTS.—CITIES AND TOWNS are empowered by the Con-
stitution and statutes to own and operate water and lighting plants
for furnishing water and lights to the municipality and to private
citizens for compensation.

2. IBID.—COMMISSIONERS OF PUBLIC WORKS.—Under the Code, 2008-11,
the commissioners of public works are made agents of the munici-
pality through which it manages its water and light plants.

THE CHIEF JUSTICE *thinks the act creates a distinct corporation
and this corporation is the agent of the city.*

3. CONSTITUTIONAL LAW.—Is the act of 1896, 22 Stat. 83, violative of
the provisions of art. VIII, sec. 5, and art. III, sec. 17, of the Con-
stitution?

4. CITIES AND TOWNS.—THE COMMISSIONERS OF PUBLIC WORKS of a city
has no authority to cut off the municipal supply of water and lights
because the city council refuses to pay the sum demanded of it by
the board for that purpose—but its duty is to resort to the Court for
such compensation, and its action here in cutting off the water and
light before exhausting its legal remedies is held to be arbitrary.

MR. JUSTICE WOODS, MR. JUSTICE HYDRICK *concurring, thinks the city
council is an agent of the municipality, with no powers except those
conferred; that it has no power in the management of light and
water plants; that the board of commissioners are merely a municipal
agent, through whom the municipality operates these plants, with
authority to fix rates, subject to inspection and objection by city
council; that the city council should not refuse to respect the charges
fixed by the board except on the clearest proof that they are unreason-
able.*

Before WILSON, J., Union, May term, 1911.    Reversed.

City of Union against the Board of Commissioners of
Public Works for the city of Union, on the following com-
plaint:

"The plaintiff above named, complaining of the above
named defendants, alleges:

1. "That the plaintiff is, and was at the times hereinafter mentioned, a municipal corporation, duly chartered and existing under and by virtue of the laws of the State of South Carolina, with full power to sue and be sued in the Courts of this State, and having full power and authority under its charter and the statute laws of this State to own property and to construct and operate waterworks and electric light works within its corporate limits for its use and that of its citizens, and also full power and authority to do and perform all things and service conferred by the laws of this State upon such municipalities.

2. "That the defendants are the duly elected and qualified board of commissioners of public works for the city of Union, and are in charge of and operating or attempting to operate the waterworks and electric light plants of the city of Union, S. C., and are officers or agents of said city of Union.

3. "That the defendants are, and for considerable time past have been, operating the waterworks and electric light plants of the said city of Union and charging the citizens thereof such rates, tolls and charges as said board established for the use of water and lights. Since June 1, 1910, the plaintiff refused to pay a flat rate of two hundred and fifty dollars per month for water and lights, which was demanded by the defendants, contending that, being the owner of said waterworks and electric light plants, it was not liable to pay a flat rate, but only liable to pay such deficiency or amount monthly, or otherwise, as may be found necessary to properly maintain and operate said plants in a proper and efficient condition, and upon proper statements being rendered to the city council, as required by section 2010, Code of Laws of South Carolina, 1902, volume I, and refused to make such payments to the defendants until such statements as required by said section were made to the plaintiff.

4. "That, upon the plaintiff refusing to make such payments to the defendants, the defendants threatened to cut off and discontinue the service of water and lights consumed by the plaintiff until their said demands were complied with; whereupon, on the 9th day of September, 1910, a 'case agreed upon in controversy, submitted without action,' was agreed upon and signed by the attorneys for the plaintiff and the defendants herein, with the necessary affidavits of the chairman of the board of commissioners and the mayor of the city, to the effect 'that the controversy mentioned in the foregoing case is real, and the proceedings in good faith to determine the rights of the parties,' to which reference is craved; wherein and whereby the two questions at issue between the plaintiff and the defendants to wit:

" 'First. Whether or not the commissioners of public works have the right, power and authority to require the city or town (the town or city council) to pay a *flat rate* for lights on the public streets of the town; or whether or not the position of the town or city council, that the town or city owns the electric light and waterworks plants, and are required, therefore, to maintain the same; and that, therefore, it is only liable to meet whatever deficiency is shown in the operation of the same, monthly (or whatever proper periods such a deficiency may be shown), upon a proper accounting to the town or city council by the commissioners of public works.

" 'It is admitted by all parties that since March 1, 1898, the commissioners of public works have required, and the town or city council have paid, a flat rate of $250.00 per month for the lighting of the streets, up until six weeks or two months ago, when the present council came into office and refused to longer pay the same, but contending as above stated; and that prior to March 1, 1898, the town or city paid the deficiency, or the entire expense of operating the plant.

" 'It is also admitted that when the proceeds of the last bond issue, about four years ago, was turned over to the commissioners of public works, same paid all the indebtedness of said commissioners, and that any present indebtedness has been incurred since that time.

" 'Second. Whether or not the monthly statements furnished by the commissioners of public works to the town or city council (the July, 1910, statement as furnished being hereto attached as a sample) is a compliance with the statute law of this State upon the subject, and especially with the statute as found in 23 Stat. 725. And if such statement is not a compliance with the statute law of this State upon the subject, then the Court is asked to prescribe or define the character and extent of the monthly statements so required by the law,' were to be submitted by the attorneys to this Court, or the presiding Judge at chambers.

5. "That for some reason it was not found practicable to argue the matter before the Court at Union adjourned; that on Monday, the 26th day of September, 1910, the defendants served copies of the following notice upon the mayor and the members of the city council, to wit:

" 'W. H. Sartor, chairman; W. S. McLure, J. T. Douglas; E. M. Anderson, superintendent. Municipal Electric Light and Waterworks, operated by the commissioners of public works of Union, South Carolina.

" 'Union, S. C., 9-26, '10.
" 'To the Mayor and City Council, Union, S. C.

" 'Gentlemen: Take notice that if after six o'clock the first day of October, 1910, the amount of one thousand ($1,000) dollars, now past due for lights and water consumed by the city, is not paid, the service will be cut off and discontinued until the demand is complied with. Respectfully submitted, W. H. Sartor, chairman; W. S. McLure, L. J. Hames. Copy of original.'

6. "That plaintiff believes that the defendants will under-take to carry out the threat contained in said notice, and will cut off and discontinue the water and lights now being used and, necessary for the conduct of the city's affairs unless restrained from so doing by this Honorable Court.

7. "That if the defendants should cut off and discontinue the water and lights as now being used by the city, as they declare in their said written notice they will do, the plaintiff and its citizens, and taxpayers, will be irreparably damaged.

8. "That plaintiff is advised, and believes that it has no adequate remedy at law in the premises, and can be relieved and protected only by the interposition of a court of equity, where matters of this nature are cognizable, and by an injunction of this Honorable Court.

9. "That plaintiff alleges, further, upon information and belief, that the defendants have failed to make such a full statement at the end of each month of their receipts and disbursements of all kinds during the preceding month, such as is required by section 2010, Code of Laws of South Carolina, 1902, volume I, but have only submitted statements giving totals; and the plaintiff prays reference to the last reports submitted as proof of this allegation.

"Wherefore, plaintiff prays judgment, as follows:

1. "That the defendants, their agents and servants, and all persons acting under them, be perpetually enjoined and restrained from cutting off and discontinuing the water and lights being supplied to the plaintiff, as the defendants have threatened to do, and from interfering in any way or manner whatever with the plaintiff's use of water and lights as now enjoyed by the plaintiff.

2. "That, in the meantime and until the final hearing of this cause, this Court do issue a temporary injunction enjoining and restraining the defendants, their agents and servants, from doing or attempting to do the threatened acts hereinbefore set forth.

3. "For such other and further relief as may be just and equitable."

From order sustaining demurrer to complaint plaintiff appeals.

*Messrs. J. Ashby Sawyer* and *Wallace & Barron,* for appellants, cite: *Definition of "control:"* 9 Cyc. 809. *Of "management:"* 26 Cyc. 123. *Construction of statutes:* 36 Cyc. 1106-8; 26 Ency. 597; 36 Cyc. 1110-1, 1144, 1146, 1147; 2 Lewis Suth. Stat. Con., sec. 443; 26 Ency. 620. *Liability of city for management of water and light plants:* 53 S. E. 342; 5 L. R. A. (N. S.) 536; 30 Ency. 417-9, 432, 1213. *Furnishing city lights is a corporate use:* 89 S. C. 511; 72 S. C. 543; 28 Cyc. 567; 1 Dillon on Mun. 97-8; 30 L. R. A. 660. *Right to cut off:* 3 Dillon 2220-1, 2213, 2223; 81 S. C. 447; 29 L. R. A. 376; 87 S. C. 566.

*Messrs. John Gary Evans, W. W. Johnson* and *S. Means Beatty,* contra, cite: *Board is a part of the municipal government:* 89 S. C. 511; 19 S. C. 572. *They are not subject to judicial control:* 45 S. E. 1025; 72 U. S. 347. *Private consumers must pay:* 81 S. C. 38. *Plaintiff must allege that it has done everything necessary to entitle it to relief or is willing to do:* 22 Cyc. 930, 929; 67 S. C. 409. *Construction of statutes:* 23 Ency. 258; 10 Bush. 491; 105 Fed. 9.

April 5, 1912.   The opinion of the Court was delivered by

MR. CHIEF JUSTICE GARY.   This is an appeal from an order, sustaining a demurrer, to the complaint, on the ground that it does not state facts sufficient to constitute a cause of action.   The complaint will be set out, in the report of the case.

The grounds of demurrer were: (1) That the defendants are under the statute law of this State, a body politic

and corporate, and no duty is imposed upon them, to do and perform the acts and obligations, set forth in the complaint. (2) That under the statutes of this State, in such cases made and provided, the defendants have the right and power, to charge any and all persons and corporations. and upon the failure of such persons and corporations to pay such price, the defendants, under the law, have the right to discontinue such service.

Sections 2008, 2009, 2010, 2011 and 2012 of the Code of Laws are as follows:

Section 2008. "All cities and towns shall have full power and authority, to construct and operate waterworks and electric light works, within the corporate limits of said cities and towns, for the use and benefit of said cities and towns, and its citizens, and to purchase, own and operate apparatus for generating either electricity or gas for the use and benefit of said cities and towns, and its citizens, or to contract for the erection of plants, either for waterworks or sewerage or lighting purposes, or sewerage, one or both, for the use of said cities and towns, and to supply the citizens thereof; and to meet the cost of same the said cities and towns may issue coupon bonds, bearing interest at a rate not to exceed six per centum per annum, payable in any legal tender money of the United States, forty years after date, with the privilege of redemption after twenty years from date: *Provided,* That before any bonds shall be issued under the provisions of this section, the city or town council, of said municipality, shall submit the question of the issue, to the qualified registered electors of such cities and towns, at an election to be held by said city or town council, appointed and conducted in accordance with the laws of force, governing municipal elections: *And provided,* That before any elections shall be held, under the provisions of this section, a majority of the freeholders of said city or town, as shown by the tax books of said city or town, shall petition said city or town council, that the said election be

ordered; and if a majority of electors voting at said election, vote for said issue of bonds, the said city or town council shall so declare by ordinance, and shall issue said bonds, and turn them over to the board of commissioners of public works of said city or town, hereinafter established. * * *

Section 2009. "At such elections for bonds, the elector shall vote for three citizens of such town or city, whose terms of office shall be respectively two, four and six years, and until the general election for municipal officers, next following the expiration of the short term; and until their successors are elected and qualified. The classification above designated, as to the terms, shall be ascertained by the commissioners after election by lot. At each general election for municipal officers, following the expiration of the term of the commissioner holding the short term, and at every such election every two years thereafter, one such commissioner shall be elected for a term of six years, and until his successor is elected and qualified. The officers so elected, and their successors in office, shall be known as the commissioners of public works of such municipality, and by that name may sue and be sued, in any of the Courts of this State. At the first meeting of the commisisoners after election, and after any election for a full term, they shall organize by the election of one of their number as chairman. The clerk or recorder of the municipality shall act as secretary of the commissioners. The mayor and aldermen of the city, or the intendant and wardens of a town, shall fill any vacancy occurring in said commissioners by death, resignation or otherwise, by appointment for the unexpired term. The persons elected or appointed to such office, shall qualify by taking the same oath, as the election officers of the municipality take. The mayor of the city or the intendant of the town, shall notify the persons so elected, as members of the commissioners of public works, of their election within ten days after the result of such election is declared. * * *

Section 2010. "Said board of commissioners of public works shall be vested with authority to build or contract for building said waterworks and said electric light plant, and to operate same, and shall have full control and management of same. They may supply and furnish water, to the citizens of the said cities and towns, and also electric, gas or other light, and may require and exact payment of such rates, tolls and charges as they may establish, for the use of water and lights. They may sell and dispose of said bonds and apply the proceeds, or so much thereof as may be necessary, towards the purchase of, or payment for said plants: *Provided,* That the said board shall make a full statement, to the city or town council, at the end of each month, of their receipts and disbursements of all kinds, during the preceding month. They shall have no power to incur any indebtedness, without the concurrence of such council.

Section 2011. "The said city or town council, are hereby authorized to assess, levy and collect, in addition to the annual tax levied for other purposes, a sufficient annual tax from the taxable property of said cities or towns, to meet the interest to become due upon said bonds, and also to raise the sum of at least one-fortieth part of the entire bonded debt, as a sinking fund in aid of the retirement and payment of said bonds. Said sinking fund shall be under the control and management of the board of commissioners of public works, and shall be applied to the said bonds, or invested to meet the payment of same when due."

Section 2012, as amended by the Act of 1909, page 42, is as follows:

Section 2012. "The said cities and towns shall have the power and authority to purchase and hold suitable lands and water, and to erect such aqueducts, dams, canals, buildings, machine shops and other works, and to construct and lay such conduits, mains and pipes, as may be necessary to obtain and secure a supply of water and power, for operat-

ing said waterworks and electric light works. And said cities and towns shall have power, to erect poles and wires along any of the adjacent highways, and in said cities and towns, and shall have the right to condemn any property and lands, the drainage from which would contaminate the water supply, of said city or town." * * *

Section 5, article VIII of the Constitution, is as follows:

"Cities and towns may acquire by construction or otherwise, and may operate, waterworks systems and plants for furnishing lights, and may furnish water and lights to individuals, firms and private corporations, for reasonable compensation: *Provided,* That no such construction or purchase shall be made, except upon a majority vote of the electors in said cities, or towns, who are qualified to vote, on the bonded indebtedness of said cities or towns."

The power of a municipality to operate an electric plant, for furnishing lights to private residences, did not exist in this State until the Constitution was adopted in 1895.

In the case of *Mauldin* v. *City Council,* 33 S. C. 1, 11 S. E. 434, 8 L. R. A. 291, the Court held, that the municipality had the express power to purchase, and implied power to operate, an electric plant, so far as it was used for lighting its streets and public buildings; but so far as it was used for furnishing lights to private residences and places of business, at a compensation, it was not for the public use of the city, and, therefore, its purchase and maintenance were to that extent *ultra vires.*

The sections of the Code of Laws hereinbefore set out, were first embodied in the act of 1896, entitled: "An act to authorize all cities and towns to build, equip and operate a system of waterworks and electric lights, and to issue bonds to meet the cost of same."

In that act is this provision, conferring corporate existence on the commissioners of public works: "The officers so elected, and their successors in office, shall be known as the commissioners of public works, and

17—91

by that name may sue and be sued in any of the Courts of this State." ·

· The powers conferred upon the commissioners of public works were intended to make them a part of the municipal government.

The act conferred upon the commissioners of public works, certain powers in regard to furnishing lights to private individuals, which they could not have exercised, prior to the adoption of the Constitution, and cannot now exercise, unless they must be regarded as agents of the cities and towns.

It will be observed, that the Constitution provides, that cities and towns alone, are authorized to furnish electric lights to individuals, firms and private corporations for reasonable compensation, yet the statute provides, that these powers shall be exercised by the commissioners of public works, an independent corporation which is not under the supervision, nor subject to the control of the city of Union, but deriving its powers directly from the statute. *Hardy* v. *Reamer*, 84 S. C. 487, 66 S. E. 678.

Turning to the title of the act of 1896 (22 Stat., p. 83), it will be seen that it only intended, that power to operate electric plants, should be given to *cities* and *towns,* yet in the body of the act, not only is full power conferred upon cities and towns, but like authority is given to the commissioners of public works, a corporation created by that act.

But as the constitutionality of that act has not been attacked, the questions whether the commissioners of public works are authorized to exercise the rights and privileges conferred on cities and towns, by section 5, article VIII of the Constitution, or whether the title of the act of 1896 is obnoxious to section 17, article III of the Constitution, which provides that "every act or resolution, having the force of law, shall relate to but one subject, and that shall be expressed in the title," are not, at this time, properly before the Court for consideration.

The circumstances under which a public service corporation, may refuse to supply a private individual with water, are thus stated in the case of *Poole* v. *Water Co.,* 81 S. C. 438, 62 S. E. 874:

"While a public service water company, has the right to cut off a consumer's water supply, for nonpayment of recent and just bills for water rents, and may refuse to engage to furnish further supply, until said bills are paid, the right cannot be exercised, so as to coerce the consumer into paying a bill which is unjust or which the consumer, in good faith and with show of reason disputes, by denying him such a prime necessity of life as water, when he offers to comply with the reasonable rules of the company, as to such supply for the current term. *State ex rel. Gwynn* v. *Citizens Tel. Co.,* 61 S. C. 98, 39 S. E. 257, 55 L. R. A. 139; *McEntee* v. *Kingston Water Co.* (N. Y.), 58 N. E. 785; *Wood* v. *City of Auburn* (Me.), 29 L. R. A. 376.

"The inconvenience arising from subjecting the water company, to the necessity of resorting to the regular Courts, to collect disputed claims, is not to be compared to the hardship to the consumer, as a member of the public, involved in permitting the water company to be judge in its own cause, and to coerce the disputant into submission by denying him water."

These principles apply with greater force when the commissioners of public works threaten to deprive the city of the electric lights, which it was furnishing. It would defeat one of the very objects for which, it is contended, the commisisoners of public works were invested with corporate powers of a public nature, to wit: to furnish lights not only to private parties, but also to the city or town. The statute authorizes the commissioners of public works to sue and be sued, and it has not been made to appear, that it has exhausted its remedies, nor that it was necessary to resort to measures so drastic, as to defeat one of the objects of its

existence.   On the contrary, it appears that its action was
arbitrary, and that there was error in sustaining the
demurrer.

Judgment reversed.

MR. JUSTICE WOODS, *concurring in the result.* I concur
in the conclusion reached by the Chief Justice, that the
demurrer to the complaint should be overruled, but I am
unable to assent to the proposition laid down in his reason-
ing, that the board of commisisoners of public works created
by the statute is a separate corporation.   The determination
of the legal status and powers of boards of commis-
sioners of public works, and their relation to the
municipality and to the city council is of great
importance, not only to the parties before the Court in the
settlement of this bitter litigation, but to the citizens of the
towns and cities where such boards have been elected.   I
venture to think that a careful perusal of the statutes set
out in the opinion of the Chief Justice will make unneces-
sary any argument to establish the following propositions
as to the status and power of the boards of commissioners
of public works and their relation to the municipality and
the city council.

1. The general power conferred by the statute "to con-
struct and operate waterworks and electric light works" is
conferred on the cities and towns as municipalities   The
city council is not the municipality, but merely an agency
of the municipality and its members are merely officers of
the municipality.   The mayor and aldermen have no
authority except that conferred by the statute either
expressly or by necessary implication.

2. The city council is not expressly given in section 1982
of the Civil Code or elsewhere any authority or power in
the management of municipal waterworks or electrical light
works, and no such authority can be implied, because in
section 2010, the General Assembly denied the city council

such power by conferring it on the board of commissioners of public works.

3. The board of commissioners of public works is not in any sense a separate corporation, but a mere municipal agency, and its members are mere elective officers of the municipality through whose management and control the General Assembly has required that the municipality shall operate and manage its waterworks and electric light works.

4. This power is derived from section 2010 of the Civil Code, which provides: "Said board of commissioners of public works shall be vested with authority to build or contract for building said waterworks and said electric light plant and to operate same, and shall have full control and management of same. They may supply and furnish water to the citizens of said cities and towns, and also electric, gas, or other light, and may require and exact payment of such rates, tolls and charges as they may establish for the use of water and lights. They may sell and dispose of said bonds and apply the proceeds, or so much thereof as may be necessary, towards the purchase of, or payment for said plants: *Provided,* That the board shall make a full statement to the city or town council at the end of each month of their receipts and disbursements of all kinds during the preceding month. They shall have no power to incur any indebtedness without the concurrence of such council."

The power thus conferred includes all powers necessarily incident to operation and management, and among these the power to fix rates for the use of light and water. In fixing rates the board is charged not only with the obligations and duties devolving upon public service corporations, but also those which devolve upon public officers, and they must make the rates reasonable and free from unfair descrimination.

5. Included in this power to operate, manage and fix rates is the power to make a reasonable charge for water and lights furnished for municipal purposes; and the duty

to pay such charges, as a municipal liability, devolves on the city council as the general fiscal agency invested by the law with the collection and disbursement of the municipal revenue.   This power to make charges and demand payment of the city council is not arbitrary; on the contrary, the manifest purpose of the statutory requirement, that "the said board shall make a full statement to the city or town council at the end of each month of their receipts and disbursements of all kinds during the preceding month," was not only to provide a safeguard against official misconduct and a stimulus to official efficiency by giving publicity to official action, but its purpose was also to enable the city council to scrutinize the account and object to excessive charges.

6. The question whether an officer or an official board has done that which the statute requires of them is judicial, and the performance of official duty will be adjudged by the Courts at the instance of persons having a legal·interest in such performance.   It follows that the Courts at the instance of the city council will enforce the performance by the board of commissioners of public works of the official duty not to make arbitrary and unreasonable charges against the city for water and lights, and at the instance of the board of commissioners of public works will enforce the performance by the city council of its official duty to pay to the board reasonable charges for lights and water.

7. Since discretion is conferred on the board of commissioners of public works in determining what charges are reasonable under all the circumstances—that is, what is the reasonable proportion of the entire expense of operating and developing the plants that should be borne by the city, and what by private consumers—and since the presumption is that officers do their duty, when the city council alleges that the demands made for the service to the municipality are arbitrary and excessive it assumes the burden of proving them to be so.

8. But this discretion of the board of commissioners of public works does not extend to impairment of public safety and comfort by cutting off the municipal water and lights on account of even an arbitrary refusal of the city council to pay reasonable charges. The municipal use of water and lights being the primary purpose for which the plants are authorized and constructed, no breach of duty by other officers can excuse the board of commissioners of public works in failing to use their utmost efforts to so manage the plants as to meet that purpose. Its recourse must be to the Courts to require the city council to perform its duty of payment.

9. On the other hand, the board being empowered to manage the plants, and being under the most exacting duty of supplying light and water, and being forbidden to incur any debt except with the consent of the city council, it is manifest that the city council should not refuse to respect and pay the charges fixed by the board except on the clearest and most convincing proof that the charge was unreasonable and arbitrary. Except in such a case its recourse must be to the Courts to require the board of commissioners of public works to perform its duty of making a reasonable charge.

The complaint in this case alleges that the board of commissioners of public works is about to cut off entirely the supply of water and the electric current necessary for municipal purposes. Under the construction of the statute above set out this allegation was sufficient to constitute a cause of action for injunction.

MR. JUSTICE HYDRICK *concurs.*

MR. JUSTICE FRASER. *I concur (in the result) in the opinion of the Chief Justice.*

I know that the city council is not the corporation, but it is "the agency through which the municipal functions

are exercised." Am. & Eng. Ency. of Law, vol. XX, page 1210.

It is also true, that "the council is the general agent of the municipality for all purposes and exercises all the corporate powers, not expressly committed by law to other boards or officers." Cyc., vol. 28, page 316.

I pass over the question as to the constitutionality of the act. What did the legislature do?

The Constitution provides that cities and towns may acquire and operate water and light plants and may furnish water and lights to *individuals, firms* and *private* corporations for a reasonable compensation. The city operates for its own use and furnishes to others for a compensation. The owner may pay expenses, but he does not furnish to himself for a compensation, toll or rate.

Did the legislature create a separate body independent of the city council and coextensive in territorial limits (water and lights ought to reach every part of the city)? If the legislature has done this, it has sown the seeds of continual conflict and the harvest will be endless trouble and litigation.

I do not think the legislature has done this, but simply created a board to take charge of the actual construction and operation of the plants, because it seemed to the legislature that a small body of men acting practically as a continuing body can manage a business enterprise better than a large and continually changing body can do. The board is allowed to charge the citizens a rate or toll, but not the city. I see no authority, either in the statute or the Constitution, to warrant this governmental agency to charge the owner a flat rate or any other rate for the output of its own plant. That it is not an independent body is shown by the fact that the act provides that the board shall make a full statement to the city or town council, at the end of each month of the receipts and disbursements of all kinds during the preceding month. They shall have *no* power

to incur *any* indebtedness without the concurrence of such council. The council by name assesses, levies and collects the necessary taxes, and when an extension is necessary the city (which we have seen means the city council) secures the new rights.

Even if I took the other view, I think the injunction ought to have been made permanent.

MR. JUSTICE WATTS *did not sit in this case.*