12492

HYAMS v. CARROLL *ET AL.*

(144 S. E., 153)

1. MUNICIPAL CORPORATIONS—BOARD OF COMMISSIONERS OF PUBLIC WORKS, CHOSEN IN ELECTION ON BOND ISSUANCE, HAS NO AUTHORITY TO INCREASE INDEBTEDNESS VOTED (CIV. CODE 1922, §§ 4430-4432).—Board of Commissioners of Public Works, chosen by people at election on question of issuance of bonds for waterworks, under Civ. Code 1922, §§ 4430–4432, has no authority to increase original issuance of bonds, or to incur additional indebtedness through giving of notes, since tenure of members of board depends on election on bond issue, and board is limited to disbursement of proceeds of bonds voted.

2. MUNICIPAL CORPORATIONS—ISSUANCE OF NOTES BY COMMISSIONERS OF PUBLIC WORKS FOR WATERWORKS SYSTEM, WITH CONCURRENCE OF CITY COUNCIL, BUT WITHOUT SPECIAL ELECTION, HELD UNAUTHORIZED (CIV. CODE 1922, §§ 4430–4432).—In controversy submitted without action, under Code Civ. Proc. 1922, § 675, proposed issuance of notes by Board of Commissioners of Public Works for construction of waterworks system, without special election, but with concurrence of City Council, *held* void, under Civ. Code 1922, §§ 4430–4432, requiring election on question of issuance of bonds for that purpose by city; Board of Commissioners being merely agents of municipality and subject to limitations on city's power.

In the original jurisdiction.   Petition granted.

*Mr. J. P. Nathans,* for petitioner.

*Mr. Geo. H. Moffett,* for respondents.

August 13, 1928.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This is a controversy submitted without action, under Section 675 of the Code of Civil Procedure.   The petitioner, a resident taxpayer of the City of Charleston, seeks an injunction to restrain the respondents, the commissioners of public works of said city, from issuing $300,000 of the notes of the commission, the proceeds of which are proposed to be used in the construction of the necessary means for the transportation of water from Edisto River to Goose Creek basin, the present water basin for the city's waterworks system.

Under Section 4432, Vol. 3, Code of 1922, the commission has full control and management of the waterworks system of the city, with power to require and exact payment of such rates, tolls, and charges as they may establish for the use of water.   It is provided by said section that the commission shall have no power to incur any indebtedness without the concurrence of the city council.   The waterworks system is owned and stands in the name of the city.

In the years 1926 and 1927, on account of light rainfall, the supply of water for the waterworks system was so limited that the commissioners of public works decided, for the protection of the public, that a connection should be made with the Edisto River, and a water supply obtained from there to augment the supply created by the present water basin of the system, which connection would assure for all time an adequate supply of water.   The City of Charleston having no available funds to meet this cost, the commissioners of public works determined to finance the cost by borrowing on notes of the commission; said notes matur-

ing over a period of five years, the payment of the same, both principal and interest, to be made out of the net revenues of the operation of the system, which revenues, according to the present income, would be amply sufficient to take care of the notes, both principal and interest, and, in order to protect the holders of the notes, the commissioners of public works agreed that the water rate during the period that the notes were outstanding would not be reduced. Accordingly application was made to city council of Charleston for authority to incur this indebtedness, and the following resolution was adopted by city council, concurring in the incurring of this indebtedness:

"It is resolved that city council of Charleston, S. C., hereby concurs in the commissioners of public works for the City of Charleston incurring an indebtedness of not exceeding three hundred thousand ($300,000.00) dollars for the purpose of making the necessary outlay for transporting water from the Edisto River to the Goose Creek Basin."

Thereupon resolutions were adopted by commissioners of public works of the City of Charleston, S. C., providing for the issuance by the commission of its notes in the sum of $300,000, maturing $55,000 on April 1, 1929; $57,000 on April 1, 1920; $60,000 on April 1, 1931; $63,000 on April 1, 1932; and $65,000 on April 1, 1933; said notes to bear the lowest rate of interest at the highest price offered by bidders; that as security for said notes the net revenues of the operations of the waterworks system were to be pledged, and the pledge of the commissioners of public works was to be given to the purchasers of said notes that the water rate would not be reduced during the time that said notes remained unpaid; that said notes were offered for sale, but all bids rejected, and are about to be again offered for sale, and will be issued and sold unless restrained by the Court.

The petitioner avers that the issuance of said notes will be illegal for the following reasons:

"1. That the said notes, though issued in the name of the commissioners of public works for the City of Charleston, are in reality obligations of the City Council of Charleston, the incurring of which obligation without a petition and election is unconstitutional.

"2. That, being an obligation of the City of Charleston, the amount can only be paid by a tax upon all property in the City of Charleston, and the petitioner as a taxpayer will have levied against his property for the payment of said notes an illegal and unconstitutional tax.

"3. That Section 4432 of the Civil Code of South Carolina of 1922, Volume 3, is in violation of Section 5, Article 8, of the Constitution, in that the Constitution provides that cities and towns alone are authorized to furnish water to individuals, firms, and corporations for reasonable compensation, whereas the statute provides that these powers shall be exercised by the commissioners of public works.

"4. The commissioners of public works of the City of Charleston have no power and authority under the law to incur indebtedness.

"5. The commissioners of public works of the City of Charleston, if they have authority to incur indebtedness, it is only such indebtedness as represents current bills for the management of the waterworks system, and have no authority to incur an indebtedness other than above and to evidence such indebtedness by negotiable notes as is now proposed to be done.

"6. The commissioners of public works of the City of Charleston, if such notes can be issued, have no power or authority to pledge for the payment thereof the net revenue of the operation of the waterworks system, it being respectfully submitted that, if the revenue of the operation of the system is more than sufficient to pay operating expenses and create a proper sinking fund for depletion and depreciation, it is incumbent upon said commissioners to reduce the water

rates charged to consumers to such basis as will be necessary for above purposes only.

"7. That, inasmuch as the City of Charleston owns the waterworks plant, the cost of the extension proposed to be made should be financed out of funds of the municipality, and not on the obligations of the commissioners of public works, to be paid out of the revenues derived from the operations of the system.

"8. The commissioners of public works of the City of Charleston have no power or authority to contract with the purchasers of said notes that the present water rates will not be reduced during the existence of the obligations proposed to be issued, as the revenues derived from the present rates might hereafter be so large that it will not only create sufficient revenue to meet said obligations, but will create an unduly large surplus, and thereby an illegal burden will be placed on consumers by reason of the inability of the commissioners to reduce said rates, due to the outstanding contract with the note holders."

The creation of the corporate body styled "Board of Commissioners of Public Works" is directly connected with, a part and parcel of, Sections 4430, 4431, and 4432, Vol. 3, Code of Laws, which provide for the construction and operation of waterworks by municipalities and an election upon the question of issuing bonds. At the election upon this question, the elector votes for the members of the board, as well as upon the issuing of bonds. The board is charged with the duty of disbursing the proceeds of the bonds thus voted. If the vote upon the bonds should fail, the election of the board would necessarily be a nullity, showing how intimately related to each other are the two propositions. If the election should result in favor of the bonds, the board elected, and later an additional supplemental issue should be carried at a subsequent election, doubtless to prevent confusion the board formerly elected would be charged with its disbursement. In other words, the board

is limited to the disbursement of the proceeds of the bonds voted, unless a subsequent issue is voted by the municipal voters. It follows, therefore, that the board has no authority to increase the original issue of bonds, or, what is the same thing, negotiable promissory notes signed by it.

We think that the opinions of Justices Woods and Hydrick, concurring in the result of the case of *Union v. Commissioners,* 91 S. C., 248; 74 S. E., 496, are conclusive upon the proposition that, under the statute and the Constitution, the Board of Commissioners of public works are but agents of the municipality, and as such have no authority to incur any indebtedness other than that incidental to the operation and maintenance of the waterworks constructed out of the proceeds of the bonds voted, and even that incidental indebtedness is subject to the concurrence of the City Council. The city could not issue the notes without compliance with Section 4430, and certainly its agent could not enjoy greater powers than the principal.

The judgment of this Court is that the prayer of the petition be granted. The petitioner may apply to this Court for a formal order of injunction in conformity with this opinion.

MESSRS. JUSTICES BLEASE, STABLER and CARTER concur.

MR. CHIEF JUSTICE WATTS (dissenting) : This matter is before the Court on an agreed statement of facts in a controversy without action, under Section 675, Volume 1, of the Code of 1922, wherein the petitioner seeks an injunction to restrain the commissioners of public works of the City of Charleston from issuing $300,000 of its notes, the proceeds to be used for construction necessary to transport water from Edisto River to Goose Creek Basin, which is the present water basin for the City of Charleston waterworks system.

The statement of facts shows : That the petitioner is a resident, taxpayer, and water consumer of and in the City of Charleston, and the respondents are the duly qualified and existing commissioners of public works of the City of

Charleston, and as such, under Section 4432 of Volume 3, Civil Code of South Carolina of 1922, have full control and management of the waterworks system of said city with power to require and exact payment of such rates, tolls, and charges as they may establish for the use of water, provided they shall have no power to incur any indebtedness without the concurrence of City Council. That the waterworks system is owned by and stands in the name of the City Council of Charleston, which is the corporate name of the City of Charleston. That in the years 1926 and 1927, on account of light rainfall, the supply 'of water for the waterworks system was so limited that the commissioners of public works decided, for the protection of the public, that a connection should be made with Edisto River and a water supply obtained from there to augment the supply created by the present water basin of the system, which connection would assure an adequate supply of water for all time. That, the City of Charleston having no available funds to meet the cost of this extension, the commissioners of public works determined to finance the cost by borrowing on negotiable notes of the commission maturing over a period of five years, payment of both principal and interest to be met out of the net revenues of the operation of the waterworks system, which revenues, according to the present income, would be amply sufficient for that purpose; the said net revenues to be pledged to the holders of the notes, with the agreement that the present water rate would not be reduced during the period that the notes were outstanding. Application was made to City Council of Charleston for permission to incur this indebtedness, which was given under resolution adopted on July 12, 1927, at a regular meeting of City Council, as follows:

"It is resolved that City Council of Charleston, S. C., hereby concurs in the commissioners of public works for the City of Charleston incurring an indebtedness of not exceeding three hundred thousand dollars ($300,000.00), for the purpose of making the necessary outlay for trans-

porting water from the Edisto River to the Goose Creek Basin."

That the negotiable notes of the commissioners of public works of the City of Charleston, aggregating $300,000, are about to be issued and sold.

The grounds of illegality as set up by petitioner are:

(1) That the said notes, though issued in the name of the commissioners of public works of the City of Charleston, are in reality obligations of the City Council of Charleston, the incurring of which obligation without a petition and election is unconstitutional.

(2) That, being an obligation of the City of Charleston, the amount can only be paid by a tax upon all property in the City of Charleston, and the petitioner as a taxpayer will have levied against his property for the payment of said notes an illegal and unconstitutional tax.

(3) That Section 4432 of the Civil Code of South Carolina of 1922, Volume 3, is in violation of Section 5, Article 8, of the Constitution, in that the Constitution provides that cities and towns alone are authorized to furnish water to individuals, firms, and corporations for reasonable compensation, whereas the statute provides that these powers shall be exercised by the commissioners of public works.

(4) The commissioners of public works of the City of Charleston have no power and authority under the law to incur indebtedness.

(5) The commissioners of public works of the City of Charleston, if they have authority to incur indebtedness, it is only such indebtedness as represents current bills for the management of the waterworks system, and have no authority to incur an indebtedness other than above, and to evidence such indebtedness by negotiable notes as is now proposed to be done.

(6) The commissioners of public works of the City of Charleston, if such notes can be issued, have no power or authority to pledge for the payment thereof the net revenue

of the operation of the waterworks system, it being respectfully submitted that, if the revenue of the operation of the system is more than sufficient to pay operating expenses and create a proper sinking fund for depletion and depreciation, it is incumbent upon said commissioners to reduce the water rates charged to consumers to such basis as will be necessary for above purposes only.

(7) That, inasmuch as the City of Charleston owns the waterworks plant, the cost of the extension proposed to be made should be financed out of funds of the municipality, and not on the obligations of the commissioners of public works, to be paid out of the revenues derived from the operations of the system.

(8) The commissioners of public works of the City of Charleston have no power or authority to contract with the purchasers of said notes that the present water rates will not be reduced during the existence of the obligations proposed to be issued, as the revenues derived from the present rates might hereafter be so large that it will not only create sufficient revenue to meet said obligations, but will create an unduly large surplus, and thereby an illegal burden will be placed on consumers by reason of the inability of the commissioners to reduce said rates, due to the outstanding contract with the note holders.

*Grounds Nos. 1 and 2*—While we are not prepared to hold that, in the event the net revenues of the waterworks system are not sufficient to pay the principal and interest of the notes when due, the city, as the owner of the system, cannot under any circumstances become responsible for the deficiency, yet that condition would not make the notes illegal, under the objections contained in the above grounds. In any event, they would be only a contingent liability. The payment of the notes is secured by the pledge of the net revenues of the waterworks system, which, under the admitted facts, are reasonably expected to be sufficient to meet the obligations without resort to a property tax, and nowhere in the

notes is the full faith, credit, and taxing power of the City Council of Charleston pledged for the payment of the obligations. *Barnwell v. Matthews,* 132 S. C., 314; 128 S. E., 712. *Briggs v. Greenville County,* 137 S. C., 288; 135 S. E., 153. *Evans v. Beattie,* 137 S. C., 496; 135 S. E., 538. *Thompson v. Christopher,* 141 S. C., 92; 139 S. E., 178.

These objections overruled.

*Grounds Nos. 4 and 5*—The power of the commissioners of public works to incur indebtedness is questioned by these objections. Section 4431 provides the commission shall be known as the commissioners of public works of the City of Charleston, and by that name may sue or be sued in any of the Courts of this State. Under Section 4432 they are vested with authority to purchase, build, or contract for building waterworks, and to operate the same, with the full control and management thereof, but are prohibited from incurring indebtedness without the concurrence of City Council. The powers of a like commission were considered by this Court in *City of Union v. Commissioners,* 91 S. C., 248; 74 S. E., 496, and Mr. Chief Justice Gary, delivering the opinion of the Court, held that the powers conferred upon the commissioners were intended to make them part of the municipal government, which they cannot exercise unless they be regarded as the agents of the city, but also held that by statute the commissioners of public works was an independent corporation, which is not under the supervision, nor subject to the control, of the city, but derives its powers directly from the statute. Mr. Justice Woods, in his concurring opinion, with which Mr. Justice Hydrick concurred, regarded the Board of Commissioners as not in any sense a separate corporation, but a mere municipal agency, through whose management and control the general assembly has required that the municipality shall operate and manage its waterworks; referring to the powers conferred, he states that it includes all powers necessarily incident to

its operation and management, and among these the power to fix rates for the use of water. It would thus seem that the Court was divided in its opinion as to whether the Board of Commissioners are an independent corporation, and the question is still open. Whether an independent corporation or not would not affect its status as a municipal agency, for it could be such under either condition; but the question is of importance in determining its power to issue the negotiable instruments in question. From the fact that the legislature provided that it may sue and be sued by its designated name, and may with concurrence of council incur indebtedness (the inhibition against performing this act without such concurrence showing clearly the intention of the statute that they should be vested with such power subject to that condition), it is evident that the legislature intended it to be and act as an independent corporation in the performance of the duties imposed upon it, even though an agent of the municipality. The control and management of the system necessarily placed upon the commission the duty of furnishing sufficient and proper water to the consumers, and when for that purpose it was necessary to build additional works to obtain an additional supply, which could be done only by the incurring of an indebtedness, when permission to incur it had been obtained from City Council in accordance with statutory provisions, the debt became a legal and valid obligation of the commission as such, whether evidenced by its negotiable notes or otherwise.

The decisions of the United States Court, and of this Court—*East Oakland Twp. v. Skinner,* 94 U. S., 255; 24 L. Ed., 125. *Buchanan v. Litchfield,* 102 U. S., 278; 26 L. Ed., 138. *Claiborne County v. Brooks,* 111 U. S., 400; 4 S. Ct., 489; 28 L. Ed., 470. *Hopper v. Covington,* 118 U. S., 148; 6 S. Ct., 1025; 30 L. Ed., 190. *Merrill v. Monticello,* 138 U. S., 673; 11 S. Ct., 441; 34 L. Ed., 1069. *Brenham v. German Am. Bank,* 144 U. S., 173; 12 S. Ct., 559; 36 L. Ed., 390. *Luther v. Wheeler,* 73 S. C., 83;

52 S. E., 874; 4 L. R. A. (N. S.), 746; 6 Ann. Cas., 754. *Jones v. Camden,* 44 S. C., 322; 23 S. E., 141; 51 Am. St. Rep., 819. *Charleston Consol. Ry. Co. v. Charleston,* 92 S. C., 127; 75 S. E., 390. *Mauldin v. Greenville,* 42 S. C., 293; 20 S. E., 842; 27 L. R. A., 284; 46 Am. St. Rep., 723. *Columbia Club v. McMaster,* 35 S. C., 1; 14 S. E., 290; 28 Am. St. Rep., 826. *White v. Rock Hill,* 34 S. C., 242; 13 S. E., 416. *Wood-Mendenhall v. Greer,* 88 S. C., 249; 70 S. E., 724—are not applicable here, as this incurring of the indebtedness by the commissioners is not one by a political subdivision of the State with power of taxation, by means of which the indebtedness is to be paid. These objections are therefore overruled.

*Ground No. 3*—We have held above that the commission, though an independent corporation, is nevertheless a municipal agency. This disposes of this objection, as the City Council of Charleston is operating its waterworks through an agency. This objection is therefore overruled.

*Grounds Nos. 6 and 8*—These grounds involve the right of the commissioners of public works to pledge for the payment of the notes the net revenue of the operations of the system, and as an incident thereto, for the protection of the holders of the notes, to contract that the present water rates will not be reduced during the period that the notes remain unpaid. Under Section 4432 the commission is vested with power to require an exact payment of such rates, tolls, and charges as they may establish for the use of water. In *City of Union v. Commissioners, supra,* Mr. Justice Woods, discussing the powers of the commission to fix rates, says:

"The power thus conferred includes all powers necessarily incident to operation and management, and among these the power to fix rates for the use of light and water  *  *  * and they must make the rates reasonable."

What is a reasonable rate, if questioned in the Courts, must depend on existing circumstances. The agreed facts show that an extension of the water basin is necessary for

the protection of the water supply; it does not appear that any question has heretofore been raised that the present rates are unreasonable, and the fact that maintenance at present basis will enable the financing of this necessary construction, for which City Council is unable to pay, does not establish such unreasonableness. *Twitchell v. City of Spokane,* 55 Wash., 86; 104 P., 150; 24 L. R. A. (N. S.), 290, and note, 133 Am. St. Rep., 1021. It covers, at most, only a short period of five years, and it is scarcely to be presumed that under any circumstances there would be any appreciable reduction of rates during so short a time. The proper management of a waterworks system requires the furnishing of an adequate supply of water, and rates necessary for that purpose cannot be held to be unreasonable. Therefore, as the rates under the circumstances are shown not to be unreasonable, a pledge that the rates would not be reduced during the existence of the notes, which are to be paid out of the net revenue derived from such rates, cannot be considered as an abuse of power, or the illegal exercise of the power conferred by statute on the commission to establish rates.

Nor are we of the opinion that the pledge of the net revenue to the payment of the notes is illegal. The net revenue derived from the operation of the waterworks system is to be used for the payment of the obligations. No representation is made to the holders that payment is to be made from any other source. Therefore, if this application is to be made in any event, we can see no illegal exercise of power in the pledge to that effect made by the commission as security for payment. The fact that, on account of falling off of revenue, it might be necessary to increase present rates to meet these obligations, cannot be held as a ground of illegality, as, under such circumstances, the increase of rates would constitute a reasonable rate for the reasons above-given as to present rates.

These objections are therefore overruled.

*Ground No. 7*—We can see no objection to this method of financing this necessary extension by the commission. If financed by the municipality, the cost of the extension would be paid for solely by the taxpayers, who are few in number in comparison with the number of the consumers who enjoy the benefit of having an adequate water supply. In fairness and justice it would seem that this method of meeting the cost of extension, being placed upon all consumers rather than a few taxpayers, is a most equitable method, and certainly the petitioner, who is a taxpayer, as well as consumer, should not be the person to complain.

This objection is overruled.

Petition should be dismissed.